# Wytheville.

## GORDON v. COMMONWEALTH.

### June 12, 1902.

1. FORGERY—*Validity of Instrument.*—An instrument is one of legal efficacy, within the rules relating to forgery, where, by any possibility, it may operate to the injury of another.

2. FORGERY—*Case at Bar—Validity of Instrument—Extraneous Evidence.*—In the case at bar, the forged paper was a check in the following form: "Staunton, Va., October 17, 1899. Farmers and Merchants Bank of Staunton, Pay to the order of . . . Ten . . . W. E. Hughes . . . Dollars, $10.00. (Signed) J. W. Gordon." Endorsed by W. E. Hughes and others, and stamped paid by the drawee. The forgery charged was the insertion of the words "in full of account to date" by J. W. Gordon after the check had been paid by the bank and surrendered to him.

    *Held:* The instrument forged is not void, nor does its validity depend upon extraneous circumstances which are necessary to be averred in order to give it efficacy. The court can perceive judicially that it might be made the vehicle of fraud and prejudice.

3. FORGERY—*Receipt—State of Accounts.*—On an indictment for forging a receipt, it is not necessary that it should be averred that the person charged with the offence is indebted to the individual against whom the receipt is forged, in order to show that the latter stands in a situation to be defrauded by the former. The guilt or innocence of the accused is not dependent on the ultimate result of a settlement of accounts between the parties, nor can one be permitted to forge an acquittance to defeat even an unjust demand.

4. CRIMINAL LAW—*Presumption of Innocence as Evidence.*—A verdict will not be set aside because the trial court refused to instruct the jury that the presumption of innocence of the accused should be considered as evidence in his favor, where the jury has been instructed as to the existence and effect of such presumption.

VOL. C—104

5. CRIMINAL LAW—*Verdict—Evidence of Juror to Impeach.*—A verdict will not be set aside upon the affidavit of one or more jurors that they were induced to consent to the verdict by an understanding that the jury would recommend the pardon of the accused. Public policy forbids that verdicts should be set aside upon such evidence.

6. FORGERY—*Alteration—When Made.*—On a charge of forgery by the addition of words to a check, the addition may be shown to have been made at any time after delivery to the payee thereof.

7. CRIMINAL LAW—*New Trial—Appeal—Conflicting Evidence.*—This court cannot set aside a verdict as contrary to the evidence, and award a new trial, where there is a substantial conflict in the evidence. In the case at bar, the evidence well warranted the verdict of the jury.

Error to a judgment of the County Court of Augusta county, rendered October 2, 1901, whereby the plaintiff in error was sentenced to the penitentiary for two years, on a conviction of forgery.

*Affirmed.*

*Curry & Glenn, J., J. L., & R. Bumgardner*, for the plaintiff in error.

*Attorney-General Wm. A. Anderson*, for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

At the October term, 1901, of the County Court of Augusta county, the grand jury returned an indictment against J. W. Gordon for forgery, under section 3737 of the Code.

There were two counts in the indictment. The first count charged that, on July 6, 1901, J. W. Gordon, having in his possession a certain order for the payment of money, commonly called a check, purporting to be the order or check of the said J. W. Gordon upon the Farmers and Merchants Bank of Staunton, for the payment of ten dollars, which was of the following purport and effect:

"STAUNTON, VA., October 17, 1899.

FARMERS AND MERCHANTS BANK OF STAUNTON.

Pay to the order of . . . . . . . . Ten . . . . . . . .
    W. E. Hughes . . . . . . . . . . . . . . . . Dollars.
$10.00.                        J. W. GORDON."

Endorsed: "W. E. Hughes," "Pay to the order of Cashier, Nat'l Valley Bank, H. Hutchinson & Co.," "Nat'l Valley Bank, Staunton, Va., Paid October 31," and with the following words on the face thereof, "Paid October 31, 1899, Farmers and Merchants Bank, Staunton, Va.," and with a two-cent United States internal revenue stamp duly cancelled thereto, and that the said J. W. Gordon, on the said 6th day of July, 1901, at the said county, feloniously did forge on the face of said order or check a writing in the following words, that is to say, "in full of account to date," with intention to defraud, and to the prejudice of the rights of others, against the peace and dignity of the Commonwealth of Virginia. The second count charged that J. W. Gordon uttered and attempted to employ as true the forged writing aforesaid, with intent to defraud.

There was a demurrer and motion to quash the indictment, both of which the court overruled, and thereupon the accused pleaded not guilty. At the trial he was found guilty by the jury, and his term of imprisonment in the penitentiary was fixed at two years.

After the verdict of the jury was rendered, the prisoner moved the court to arrest the judgment, and also to set aside the verdict as contrary to the law and the evidence, which motions were likewise overruled, and judgment was rendered in accordance with the verdict. During the progress of the trial, a number of exceptions were taken by the accused to rulings of the court.

The case having been carried to the Circuit Court of Augusta

county, and the judgment of the County Court there affirmed, was brought here upon a writ of error awarded by one of the judges of this court. The assignments of error will be considered in the order in which they were presented at bar.

The objection to the indictment, raised by the demurrer, and motions to quash, and in arrest of judgment, is that the instrument alleged to have been forged was invalid and meaningless, or, if in fact valid, that its validity depended upon extraneous circumstances to give it efficacy, which were necessary to be averred; and that even if the words, "in full account to date," were written by the accused on the face of the paper, after it had been paid and returned to him, it was not a forgery in contemplation of the statute, because the words were written upon a void instrument, and could not, therefore, have operated to the prejudice of another's rights. *Terry's Case*, 87 Va. 673.

The authorities sustain the principle invoked, but, it is conceived, that the case in judgment does not come within its influence. · It must be conceded that, as a check, the paper in question was irregular, possibly so irregular that the bank would have been justified in refusing payment. But the *gravamen* of the charge is not the forgery of the check, as such, but, its endorsements, as a receipt. After it had been construed and treated by the parties as a valid check for ten dollars, drawn by J. W. Gordon, payable to the order of W. E. Hughes, endorsed by Hughes in blank, endorsed by H. Hutchinson & Co. to the cashier of the Valley Nat'l Bank, endorsed and stamped paid by the Valley Nat'l Bank, and stamped on its face "paid" by the Farmers and Merchants Bank, upon which it was drawn, and had been delivered to the drawer, J. W. Gordon (and this is the legal import of the paper, with its endorsements, etc., as set out in the indictment), however irregular it may have been in its inception, according to business usage and custom, and common understanding, it constituted a valid voucher from

Hughes to Gordon for ten dollars, which the former, by his endorsement and conduct, was estopped to deny. That being the legal import of the paper with its endorsements, the addition of the words "in full of account to date," alleged to have been fraudulently written upon the face of it by the accused after the paper came to his possession, had the effect of converting a genuine receipt from Hughes to the accused, for ten dollars, into a *spurious receipt* "in full of account to date," and necessarily enured to the prejudice of Hughes' rights. The writing, with the endorsements set out in the indictment, was sufficient to enable the court to perceive *judicially* that it might be made the vehicle of fraud and prejudice, as charged, and hence the averment of extrinsic circumstances was unnecessary. *Henry* v. *State*, 35 Ohio St. 128; *Snell* v. *State*, 2 Humph. (Tenn.) 347; *Rex* v. *Martin*, 7 Carrington & Payne, 549.

Forgery at common law is defined by Blackstone as the fraudulent making or altering of a writing, to the prejudice of another's rights. (4 Bl. Com. 247.) And that definition is substantially embodied in section 3737 of the Code.

Bishop's definition, which has been adopted by this court in the case of *Terry* v. *Com.*, *supra*, is: "Forgery is the fraudulent making of a false writing, which, if genuine, would be apparently of legal efficacy." Bishop Cr. L. (3d ed.), sec. 495.

The doctrine may be stated generally, that an instrument is one of legal efficacy, within the rules relating to forgery, where by any possibility it may operate to the injury of another. *People* v. *Rathbun*, 21 Wend. 509; *Williams* v. *State*, 61 Ala. 33; *Com.* v. *Linton*, 2 Va. Cas. 476; *People* v. *Munroe*, 100 Cal. 664, 24 L. R. A. 33; *Hickson* v. *State*, 54 L. R. A. 327.

In *Rollins* v. *State*, 22 Tex. App. 548, 58 Am. R. 659, it was held that the following writing was the subject of forgery: "Apolas, Halsal, Please let Mr. G. B. Rowlands have 4 $ 00 d. in goods and oblige. Charge to me, Jack E 3 ler." This was

held to be an order on Apolas & Halsel for $4 in goods, and that extrinsic proof was admissible to show whose signature it was.

So, in *Hobbs* v. *State*, 75 Ala. 1, a writing: "Please send me word how long you will give Stevens to pay for the bed, and if you will allow him time enough to pay for it let him have a cheap bureau, as cheap as possible, and I will see that you will get so, and oblige, much a week. Just write it off the whole thing and send it to me," was held to be an instrument of apparent legal efficacy, and not so obscure as to be unintelligible without reference to extrinsic facts, and therefore a subject of forgery.

In *Hendricks* v. *State*, 26 Tex. App. 676, it was held that a written communication as follows: "Mr. Gladstone, please let Bare have the sume of $5 in grosses, and charge the same to Dr. F. T. Cook," was an order for merchandise or goods or property of some kind, and was the subject of forgery, no averment of extrinsic facts being necessary to show that such was its character.

And it has been held that a bank note in which a blank is left in the body of the note, where the number of dollars should appear, the denomination appearing elsewhere in the bill, is a note of that denomination, and may be a subject of forgery. *State* v. *Dourden*, 13 N. C. 445. And so, also, though the word "pounds" is omitted in the body of the note, when the amount of the note with the sign "£" is placed in the margin. *Rex* v. *Elliott*, 2 East P. C. 951, 1 Leach, C. C. 175.

It is immaterial, therefore, whether the paper in question was or was not a valid negotiable instrument. It is only necessary, according to the foregoing definitions and authorities, that it was a writing of such apparent legal efficacy that the forgery of it might have been used to the prejudice of another's rights. That, with the endorsements upon it at the time of the alleged fraudulent alteration, it was such a writing, there can be no question.

It follows from these views that there was no error in the action of the trial court in overruling the demurrer to the indictment, and the motions to quash, and in arrest of judgment.

At the trial, over the objection of the prisoner, the court gave the following instruction to the jury:

"The court instructs the jury that if they believe from the evidence that the accused altered the check after it had been paid in the bank, with intent to defraud, or that the accused altered said check after it had been paid in bank, and, after said alteration, uttered or attempted to employ as a true receipt said altered check, then they must find the accused guilty, and this is true, whether at the date of said check the accused actually owed the payee of said check, W. E. Hughes, or not."

The objection to this instruction is based on the theory that, if at the time of the alteration of the check the accused was not indebted to Hughes, the alteration could not have been to the prejudice of his rights, and was, therefore, not a forgery, in contemplation of the statute. It is believed that this contention is not sustained either by reason or authority. It would be, indeed, a dangerous doctrine to make the guilt or innocence of a person who undertakes to manufacture defensive evidence in his own behalf dependent upon the ultimate result of a settlement of accounts between the parties, rather than upon his fraudulent and wrongful conduct in fabricating false and forged evidence to sustain his side of the controversy. Let the result be what it may, Hughes had a right to have the litigation pending between himself and the accused decided according to the law and the evidence, and the fraudulent conversion of a check for ten dollars drawn by Gordon in his favor, into a receipt in full, *necessarily* deprived him of that right, and operated to his prejudice, at least, in that it increased the burden of proof which rested upon him.

The essence of the crime in this case consisted in the false making, or alteration, of the receipt in question, with fraudulent

intent, 'and to the prejudice of another's rights. The false making of the receipt by the accused to maintain his contention with Hughes fulfilled all these conditions, and the crime was complete, irrespective of the standing of accounts, or merits of the controversy between the parties. It was not essential that the accused should be indebted to Hughes, or that Hughes was defrauded by his act, or that the accused reaped the fruits of his crime. His status was not affected by the justness or unjustness of Hughes' demand, or whether the receipt was or was not allowed. It is not permissible for one to forge an acquittance to defeat even an unjust demand. The accused had no right to manufacture evidence, and if he had no such right, his conduct in doing so was prejudicial to the person against whom the testimoney was fabricated. Hughes may have been honest in the belief that Gordon was indebted to him, and yet mistaken. He had a right to submit his claim to the arbitrament of the courts; and when the accused undertook to defeat the result by false evidence, he was guilty of a crime which operated to the prejudice of Hughes.

A. gave his clerk, B, a blank check, and directed him to fill it up with an amount of a bill and expenses (for which A had to provide, and which amount B was to ascertain), and get the check cashed, and pay the amount to W, and take up the bill. The bill was for £156 9s. 9d.; the expenses was about 10s. B filled up the check with the sum of £250, had it cashed, and kept the whole amount, alleging that it was due to him for salary. It was held that B was guilty of forgery, and that this was so even if B *bona fide* believed that the £250 were due him from A, or even if it were really due to him. *Rex* v. *Wilson*, 2 Car. & Kir. 527.

"In an indictment for forging a receipt, it is not necessary that it should be averred that the person charged with the offence is indebted to the individual against whom the receipt is forged, in order to show that the latter stands in a situation to

be defrauded by the former." Wharton's Am. Cr. L. (4th and revised ed.), sec. 1482; *Snell* v. *State*, 2 Humph. 349; *Com.* v. *Ladd*, 15 Mass. 526; *Williams* v. *State*, 61 Ala. 39; 1 Wheat. Cr. L., sec. 691, 692; 2 Bish. Cr. L. (8th ed.), sec. 546, clause 5; *Flower* v. *Shaw*, 2 C. & K., N. P. 702; *Claiborne* v. *State*, 51 Ark. 88; *State* v. *Kimball*, 50 Me. 409; *Bush* v. *State*, 77 Ala. 83.

The court also gave five instructions at the instance of the accused, which liberally and fairly expounded the law as to the presumption of innocence, reasonable doubt, and the *quantum* of evidence necessary to warrant a conviction.

The accused asked for eight other instructions, all of which were refused. The first of these instructions was to the effect that the presumption of the innocence of the accused should be considered as evidence in his favor. In a certain sense, presumptions are evidence, and text-writers so declare of presumptions of innocence. 1 Greenleaf (Lewis' ed.), sec. 34. But the accused was only interested in having the jury informed of the existence and effect of the presumption. His rights in that respect were amply guarded by the instructions given.

Instructions 2, 4, 5 and 8, in the order in which they were presented, in one form or another, embody the theory that unless the accused owed Hughes at the date of the alteration of the check, he was not guilty of the forgery charged. But that, as has been remarked in connection with the instruction given at the instance of the Commonwealth, is not the criterion of the guilt or innocence of the accused.

The third instruction told the jury that it devolved on the Commonwealth to show, beyond a reasonable doubt, first that the check was altered by the accused, after it had been paid and delivered to him; second, that the alteration was made by the accused with intent to defraud; and, third, that the alleged alteration of the check was, or may have been, to the prejudice

er injury of the rights of the prosecutor, or some one else. Conceding the soundness of the second and third propositions, the first condemns the instruction. The accused might have been guilty of forgery, although the check had never been paid or delivered to him. Indeed, if the entire writing—check, endorsements, stamps and alleged forged words—had been all made by the accused, and had never passed out of his possession, the offence might still have been consummated. But, in any event, the time fixed for the alteration should have been after the check was delivered to Hughes, rather than after it had been paid and delivered to the accused.

The remaining instructions, 6 and 7, are liable to the same objections as the third. With respect to the instructions generally, it may be affirmed that those given by the court clearly and correctly expound the law applicable to the case made by the evidence; and that those refused were properly rejected, for the reasons set forth in connection with them respectively.

Nor was there any error in the ruling of the court in refusing to set aside the verdict for the alleged misconduct of the jury. That motion was based upon the affidavit of a member of the jury to the effect that affiant and another juror were induced to consent to a verdict of guilty, with the understanding that the jury would recommend the pardon of the accused. It is sufficient to say of this assignment that public policy forbids that the precincts of the jury-room should be invaded and verdicts impeached in that manner. *Bull* v. *Com.*, 14 Gratt. 613; *Danville Bank* v. *Waddill*, 31 Gratt. 469; *Steptoe* v. *Flood*, 31 Gratt. 223; *Moses* v. *Cromwell*, 78 Va. 671.

The remaining exception is to the action of the court in overruling the motion of the prisoner to set aside the verdict of the jury and grant him a new trial because the verdict was contrary to the law and the evidence. The rigorous rules which, by the provisions of the statute, must be applied to the consideration of this motion, are well understood. Acts 1889-'90, p. 36. But,

if the limitations thereby imposed were less stringent, this court would not be warranted in setting aside the verdict. The evidence is voluminous, and a detailed discussion of it would serve no good purpose. The subject might be dismissed with the observation that the charge against the accused is sustained by the direct testimony of Hughes, supported by many of the circumstances of the case. This, coupled with the evidence of the bad character of the prisoner, and the fact that the theory of the defence is practically broken down and destroyed by the inconsistent and irreconcilable statements of the accused himself, demonstrate that the verdict of the jury was right. Upon the trial of a civil warrant between the parties, the accused testified that he met Hughes in front of Hoge & Hutchinson's store in Staunton; that Hughes told him he was hard up and needed money badly, and asked him to pay his account; that, thereupon, he wrote the check in question, which Hughes accepted and delivered to Hoge & Hutchinson. He was thoroughly committed to that view, and suggested none other in connection with the making of the check. On the trial of this prosecution, an entirely different theory was propounded. His new version of the matter may be given in his own language: "Mr. Hughes came up there, and I was not at home. He came back the second time, and he saw a man by the name of Hunter working in the mill at the end of the orchard, and he told him he wanted me to send him some money; that he needed it very badly. Mr. Hunter told me that Mr. Hughes said I owed him $10. That night I fixed up the check and intended to send it by Mr. Hunter, but as he was going to pack apples early next morning, so soon, I asked my wife to take it down. She was going along to bring the buckboard back. So the next morning, I was out talking to them, just before they started, and I said, 'I will go back and make this a receipt in full, and if he does not accept it bring it back to me.' " That he sent the check by his wife, and she delivered it to Hughes. In this manner he undertook to ac-

count for the alleged difference in appearance of the ink with which the words "in full of account to date" were written, and the other writing on the check. Some of the witnesses testified that the ink in the "in full of account to date" looked fresher, and was of a different shade. A lapse of memory could hardly have accounted for the discrepancy between these clearly-defined and detailed statements. Upon the trial of the civil warrant, accused did not pretend that the transaction had faded from his memory, but, on the contrary, declared that he remembered the time, place, and circumstances of giving the check, including the conversation between Hughes and himself which led up to it. His attempted explanation tends still further to show that he was not telling the truth. He pretended to have confounded the check in controversy with a check for $1.50, dated October 19, 1899, about which he says he had the conversation with Hughes, and delivered it to him in front of Hoge & Hutchinson's store. But, when asked to explain why he gave Hughes that check, if, as he maintained, he had the day before settled with him in full with the $10 check, he replied that his wife might have bought other goods. It is not surprising that the jury refused to give credence to such an unreasonable story, emanating as it did from a discredited source.

There is no error in the judgment complained of, and it must be affirmed.

*Affirmed.*