## E. R. NIX v. STATE.

No. A-3693.  Opinion Filed Jan. 10, 1922.
(202 Pac. 1042.)

(Syllabus.)

1. **Appeal and Error—Discretion of Court—Denial of Continuance for Defendant's Illness.** Where, in a motion for a continuance, the defendant urges that he is a necessary witness in his own behalf, and is physically and mentally unable to stand the strain and

tension of a trial and to properly aid and advise his counsel, held, that the overruling of the motion, under the circumstances recited in the opinion, was not error.

2. **Forgery—Fraudulent Alteration of Canceled Check—"Writing of Another."** The fraudulent alteration of a canceled check, used as a receipt or voucher, bearing the indorsement of the payee, may be the subject of forgery.

(a) Such instrument may be "the writing of another," within the meaning of section 2637, R. L. 1910.

3. **Trial—Remarks of Court.** Alleged prejudicial remarks of the court held not to be reversible error.

4. **Evidence—Venue Shown by Circumstantial Evidence.** The venue of the offense of forgery may be shown by circumstantial evidence.

Appeal from District Court, Hughes County; George C. Crump, Judge.

E. R. Nix was convicted of forgery in the second degree and sentenced to serve a term of six months in the state penitentiary, and he appeals. Affirmed.

Turner & Lucas, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. E. R. Nix, the plaintiff in error, hereafter called the defendant, was convicted in the district court of Hughes county, Okla., on the 6th day of December, 1919, upon an indictment for forgery, charging that the defendant, on the 4th day of May, 1918, was the duly appointed and acting guardian of Minnie McCoy, and that on that day, as guardian, he made and delivered a check drawn upon the American National Bank of Holdenville, payable to his ward, in the amount of $6; that said check was by Minnie McCoy indorsed and presented to the bank for payment, and that she received from the bank the sum of $6; that afterwards, on the 14th day of January, 1919, the defendant, having in his possession this can-

celed check, bearing the indorsement of his ward, Minnie Mc-
Coy, and having and using this check as a voucher against the
estate of Minnie McCoy, feloniously and fraudulently altered
the same by inserting an "0" between the figure "6" and the
"00" following a period, and by adding the letters "ty" to
the word "six" as originally written in the check, thus mak-
ing the amount of this check and voucher read "$60.00" in-
stead of "$6.00;" that the alteration of this check and voucher
was done by the defendant for the purpose of cheating and
defrauding his ward, Minnie McCoy, by later presenting the
check and voucher as a receipt for money paid his ward in his
final settlement and accounting with his ward.

The testimony produced by the state at the trial definitely
and sufficiently supported the allegations of the indictment.
The defendant did not take the stand and produced no wit-
nesses or testimony in his behalf, except two witnesses intro-
duced as character witnesses, whose testimony was to the ef-
fect that the defendant's general reputation as an honest, law-
abiding citizen in and about Holdenville where he lived, was
good.

The defendant's assignments of error, for convenience,
may be grouped as follows: (1) Error of the court in denying
defendant's motion for a continuance; (2) insufficient facts
charged and proved to constitute the crime of forgery; (3)
prejudicial remarks of the court; (4) that the court erred in
his instructions to the jury and in his refusal to give instruc-
tions requested by the defendant; (5) error in failing to prove
venue.

The motion for a continuance declared, in substance, that
the defendant was not physically able to undergo the strain
and tension of a trial; that defendant had for months been un-
der the care of a physician, being afflicted with a diseased
condition of the prostate gland, and that his mental and physi-

cal condition was badly impaired, to such an extent that he had been unable to properly advise with counsel and prepare his defense; that he had recently been examined by three competent physicians, who had recommended an immediate operation, and that a recovery from the operation would require from six weeks to a year. The motion for a continuance was supported by the affidavits of the physicians, in which they stated that the defendant was very nervous, irritable, and unaccountable for his statements and actions. The motion was further supported by the affidavit of John E. Turner, of counsel for the defendant, who stated that the defendant was a material witness in his own behalf, and that he had been unable to concentrate his mind on the case and that it had been impossible to properly prepare for trial; that it was necessary that the defendant be present at the trial and strong enough physically to undergo the strain of a trial, and be in such condition mentally that he could concentrate his mind upon the circumstances and facts connected with the matters with which he stood charged, which he was not able to do at that time. No showing was made, however, indicative of what defendant's testimony would be.

A second and further ground for a continuance was urged, to the effect that Dr. Hugh Scott, a physician who had treated the defendant, was a material witness on behalf of the defendant; that he had recently been recalled into the United States army and was beyond the reach of process of the court; that this witness, if present, would testify that the defendant was in a highly nervous and irritable state of mind, likely to say anything and to commit acts contrary to and in derogation of his former acts, statements, and declarations, and that for more than three months the defendant had been deficient in mental capacity.

The matters and things set out in the motion for a continuance and in the affidavits in support of it, for the most

part, indicate that counsel for defendant feared or were apprehensive of defendant's mental capacity, indicating that he was not then of sound mind and not of sound mind at the time of the alleged offense. The record shows that the court so considered the motion, and that he gave the defendant and his counsel opportunity to inquire into the sanity of the defendant in the manner prescribed by law, which offer was by defendant's counsel waived.

After the overruling of the motion for a continuance, the record of the subsequent proceedings shows that the defendant was physically able to be and was present at the trial; that the act of forgery charged was definitely and clearly proved, and that the circumstances surrounding the alteration of the instrument, as charged, were susceptible of no explanation indicative of a want of felonious intent; that the defendant did not take the stand or offer any explanation, and under the circumstances disclosed in this record, irrespective of the state of his health, he could have made no explanation that would have in any way justified the act, save and excepting a plea of insanity.

The defendant was present in the courtroom at the time of the hearing of the motion for a continuance, where the trial judge had an opportunity to observe his physical condition; beyond this, the record shows that the trial judge, for some days previous, had observed the defendant in passing to and from his home in Holdenville. The rule as stated in 16 Corpus Juris, p. 457, is as follows:

"Continuances based on the mental or physical condition of defendant at the time of application therefor are addressed largely to the discretion of the trial court. However, where it appears that the accused is too sick to attend trial, it has been held that the court must grant a continuance, even though the testimony of the principal witness for the state, without which a conviction is impossible, will be lost. On the other

hand, where it does not appear that the accused would be better able to go to trial at a subsequent term, and there is evidence that he might actually be less able, a continuance may very properly be refused. The exercise of such discretion will not be held to be abused where the court determines his alleged physical disability or illness by a personal inspection or examination.''

The illness of an accused which may prevent him from properly presenting his defense or rendering the assistance to counsel that he otherwise would do is generally held a reasonable ground for a continuance. However, a motion for a continuance because of the illness of a party is addressed to the sound discretion of the trial court—a discretion with which the appellate court will not interfere unless it appears that it was abused to such an extent that prejudice or injury results. Rose v. Monarch, 150 Ky. 129, 150 S. W. 56, 42 L. R. A. (N. S.) 660, 667, and notes and annotations thereto.

In passing upon a motion for continuance in a criminal case upon the ground of the physical condition of the accused, the trial judge may consider the testimony produced as well as the condition of the accused as it appears to him. Gregg v. City of Kingfisher, 8 Okla. Cr. 8, 125 Pac. 1093; notes to Rose v. Monarch, supra; Rawlins v. State, 124 Ga. 31, 52 S. E. 1; Goddard v. State, 78 Ark. 226, 95 S. W. 476; Lipscomb v. State, 76 Miss. 223, 25 South. 158; Rucker v. State, 77 Ark. 23, 90 S. W. 151; Humphrey v. Humphrey, 3 Neb. Unof. 467, 91 N. W. 856.

From all that appears in the record, we conclude that the trial court did not abuse his discretion in overruling the motion for a continuance.

It is next claimed that the allegations contained in the indictment and the proof offered in support thereof constituted no statutory offense; that the instrument in controversy was

not the "act of another," as contemplated by statute. This charge was doubtless predicated upon the second paragraph of section 2637, R. L. 1910, which is as follows:

"Any person who, with intent to defraud, falsely marks, alters, forges or counterfeits: * * *

"Second. Any instrument of writing, being or purporting to be the act of another, by which any pecuniary demand or obligation is or purports to be created, increased, discharged, or diminished, or by which any rights or property whatever are, or purport to be, transferred, conveyed, discharged, diminished, or in any manner affected, the punishment of which is not hereinbefore prescribed, by which false marking, altering, forging or counterfeiting any person may be affected, bound or in any way injured in his person or property, is guilty of forgery in the second degree."

It is contended by the defendant that after the $6 check in controversy was delivered to Minnie McCoy and by her indorsed and cashed, and the canceled check returned to the defendant, this canceled check, bearing her signature and indorsement, had then spent its force as an order to pay money, was "functus officio," was evidence of no obligation between the parties, and therefore not subject to a penalty for forgery by way of alteration. This was all true, in so far as the instrument related to an order to pay money, but after its payment and the return of the instrument to the defendant, with the signature and indorsement of his ward, it then had another function—it was then a receipt or acquittance from the ward to the defendant, as guardian, for money which he could plead payment of in an action in assumpsit against him by the ward; and when the defendant, for a fraudulent purpose, changed the amount of this receipt or acquittance from $6 to $60, with the intent and for the purpose of filing the same as a voucher from his ward in his final settlement with her and taking credit for the larger amount, such alteration, in our opinion, constituted forgery.

Under the circumstances here, the instrument was originally the instrument and writing of the defendant, but after it had performed its function as an order to pay money it seems clear to us that it then became the receipt or acknowledgment "of another," in this case the ward, for the payment of money received by her; it then became her receipt, the fraudulent alteration of which would constitute forgery.

From the reference books and reports we find that it is well settled that a receipt is the subject of forgery provided it would operate as the foundation of another's liability or be prejudicial to his rights, if genuine. Any change in such an instrument which alters its legal effect or makes it speak in a substantial matter a different legal language, and causes any obligation to be increased, diminished, or discharged, is forgery. 19 Cyc. 1381; 12 R. C. L. 147; Wharton's Crim. Law §§ 885-887.

In the case of Gordon v. Commonwealth, 100 Va. 825, 41 S. E. 746, 57 L. R. A. 744, appears this language:

"To add to a canceled check the words 'in full of account to date' with intent to alter its effect as a receipt, constitutes forgery. * * * The addition to a check of the words 'in full of account to date', may constitute forgery if made at any time after the check is delivered to the payee."

A returned check, marked "Paid," according to business usage and custom and common understanding, constitutes a valid receipt from the person indorsing the check and receiving payment. Such being its function and legal effect, where the receipt or voucher has been raised or altered, to the injury of the maker of the receipt, it may be the subject of forgery. As to the character of an instrument which may be the subject of forgery, it must be such that if it were genuine it would have some apparent legal efficacy. It must be one which would work some prejudice to another, affecting his per-

son or property rights; one which, from its nature and the course of business, might deceive or mislead, to the prejudice of another. Notes and annotations to People v. Munroe, 100 Cal. 664, 35 Pac. 326, 24 L. R. A. 33, 38 Am. St. Rep. 323.

A receipt may be the subject of forgery, although the fraud intended was never consummated· It is sufficient to show that the person sought to be injured might have been defrauded had the forgery succeeded. Commonwealth v. Brown, 147 Mass. 585, 18 N. E. 587, 1 L. R. A. 620, 9 Am. St. Rep. 736; State v. Wooderd, 20 Iowa, 541.

It is next urged that the court made certain prejudicial remarks in the course of the trial. Before the jury had been impaneled or called into the box, while the motion for a continuance was being discussed, and just before the court overruled the motion, the court said, among other things, "I don't think, Mr. Turner, this affidavit is made in good faith; I don't think it is." Defendant complains that this statement, made just a few minutes before the jury was called into the box for examination, was necessarily heard by them or some of them, and that the jurors who afterwards qualified must have been influenced by the remarks. In support of this assignment of error the defendant relies upon the case of Boyer v. State, 16 Okla. Cr. 388, 183 Pac. 620; the trial judge in the Boyer Case being the judge sitting in the case at bar.

In the Boyer Case, while the motion for a continuance was being urged, the trial court made the following remarks:

"The court took judicial notice that when the case was called he [Mr. Norvell] got sick all at once, and from the conduct of the attorney just before the case was called and this [the motion] it is simply a ruse to pass the case over."

In the opinion written by Judge Armstrong the court said:

"We do not approve the remarks of the court made in open court and in the presence of the jurors assembled from whom a jury to try the case was to be selected, * * * but we do not think that in making said remarks the court committed such error as alone should cause a reversal of this case."

A further perusal of the Boyer Case indicates that in that case the court and the attorney for the defendant assumed a hostile attitude from the beginning of the trial, and that disparaging remarks and side remarks were indulged in by both the court and the defendant's attorney during the further progress of the trial, and that the situation became so tense that the attorney for the defendant was twice fined for contempt of court. We conclude, therefore, that the circumstances in the Boyer Case show an altogether different state of facts than is here involved, and that the declaration of Judge Armstrong, "we do not think that in making said remarks the court committed such error as alone should cause a reversal of this case," applies with much greater force in this case.

It is further urged that the court erred in giving certain instructions and in refusing to give an instruction requested by the defendant. The instructions given by the court of which complaint is made, touching upon circumstantial evidence, intent to defraud, and the alteration of the instrument in controversy, have been examined, and are held to fairly state the law with reference to the subjects treated. The instruction requested by the defendant and refused by the court was as follows:

"The defendant requests the court to instruct the jury that before you can find the defendant guilty you must find beyond a reasonable doubt that the check which is alleged by the state to have been altered is the writing of some person other than the defendant."

The question of law sought to be raised by this requested instruction has been, we think, sufficiently treated elsewhere

in this opinion, and we hold that there was no error in refusing to give the instruction.

Finally, it is urged that this cause should be reversed, for the reason that the state failed to prove that the crime was committed in Hughes county. Ordinarily, forgeries are not committed in public places nor in the presence of witnesses. The possession of the forged instrument in the county where the forgery was alleged to have been committed is prima facie evidence that the forgery was committed in that county. If a genuine instrument has been altered, the place where it is first known to have been altered is, prima facie, the place where such alteration is made, although it may have been originally issued elsewhere. It is often difficult, indeed, sometimes impossible, to prove exactly where the alteration was made, and it therefore becomes necessary to resort to circumstantial evidence to prove venue. 19 Cyc. 1425, 1426; Gritts v. State, 6 Okla. Cr. 534, 118 Pac. 673, 120 Pac. 669.

There is a presumption that the forgery was uttered in the county where the fraud was perpetrated or attempted. 12 R. C. L. 153, and cases there cited.

Finding no prejudicial error in this record, the judgment of the trial court is affirmed.

DOYLE, P. J., concurs.

MATSON, J., not participating.