142 So.2d 666

**Helen CHRISTISON**

v.

**STATE.**

**7 Div. 588.**

Court of Appeals of Alabama.

Dec. 13, 1960.

Rehearing Denied Jan. 17, 1961.

Geo. Murphy and Roy D. McCord, Gadsden, for appellant.

MacDonald Gallion, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

CATES, Judge.

Miss Christison appeals from a judgment based on a general verdict of guilt on a two count indictment. The trial judge sentenced her to five years imprisonment.

The two pertinent counts [1] are as follows:

"Count One

"The Grand Jury of said County charges that before the finding of this Indictment Helen Christison, alias Helen A. Christison, whose name to the Grand Jury is otherwise unknown than as stated, did, with intent to injure or defraud, alter, forge or counterfeit a certain bank check, which was in substance as follows:

" 'General Fund      No. 5028½
    Gadsden, Ala.    January 23, 1951

Pay to the
order of    Clorene C. Hallmark    $225.00
Two Hundred Twenty-five and No/100 Dollars
The American National Bank
Jan SPR 50–51 Gadsden, Ala.
         Helen A. Christison
         Custodian, Etowah County
         School Funds
endorsed:    Clorene C. Hallmark'

or with the intent to injure or defraud, did utter and publish as true the said falsely altered, forged, or counterfeited bank check, knowing the same to be so altered, forged or counterfeited, contrary to law and against the peace and dignity of the State of Alabama."

"Count Three

"The Grand Jury of said County further charges that before the finding of this Indictment Helen Christison, alias Helen A. Christison, whose name to the Grand Jury is otherwise unknown than as stated, the Custodian of Etowah County School Funds, and being then and there entrusted with the disbursement of money or funds belonging to the Board of Education of Etowah County, Alabama, did embezzle or convert to her own use, or to the use of another, a bank check in the amount of $225.00, and of the value of $225.00, drawn by the said Helen Christison, alias Helen A. Christison, as Custodian of the Etowah County School Funds, made payable to Clorene C. Hallmark, and drawn on the American National Bank of Gadsden, Alabama, a national banking association chartered by the Federal Government through the office of the Comptroller of the Currency, which said bank check had come into her possession by virtue of her public office or public trust, as aforesaid, contrary to law and against the peace and dignity of the State of Alabama."

Another count, numbered two, charging embezzlement of $225 of the Board's money was nol prossed on the defense's filing pleas of autrefois acquit.

The Hallmark check, according to the State's evidence, was originally made payable to "Helen Christison—Bookkeeper," and the reverse was also thus endorsed in pencil. Etowah County Exchange, Inc., was the second endorser. Miss Christison's sister, Edna, worked for the Exchange at that time.

Presumably after the bank paid the check and charged it to Miss Christison's account as Custodian, the payee's description was changed to read "Clorene C. Hallmark" as was the endorsement. Clorene C. Hallmark, a teacher on maternity leave without pay in January, 1951, denied that she had written the purported endorsement.

Over defense objection, because of showing other offenses, the trial judge admitted checks (other than the Hallmark check) as bearing on "system," "intent," "motive" and "identity." [2] All of them,

---

1. The defense demurred to count one and assigned inter alia: (a) failure to aver. that the check was on an incorporated bank; (b) that as a matter of law a person cannot forge his own bank check. Upon the court's overruling the demurrers, the defendant plead autrefois acquit.

2. One of these checks (No. 2934) furnished the clearest circumstantial illustration of the scheme used by Miss Christison. Miss Christison had it made. out payable to herself for $225. It was negotiated through The First National Bank of Birmingham where the face of it was microfilmed. A photograph

according to the State's evidence, were forged as were the endorsements; each alteration was of the name of the payee. At the close of the State's case in chief, the endorsements (including that of the Hallmark check) and the evidence concerning their alteration were confined by the court solely for the jury to consider as bearing on the embezzlement count.

Miss Christison's brief urges the following points of claimed error: (1) the denial by the court below of her pleas of autrefois acquit; (2) admission of evidence of other forged checks; (3) validity of the Hallmark check; (4) variances and lack of proof as tested against the allegata of count one; (5) admission of opinion testimony; (6) argument of the solicitor; (7) the overruling of demurrers to count one; and (8) the refusal of written charges.

The double jeopardy issue arose from Miss Christison's acquittal by a petty jury on December 12, 1957, of the charges in a three count indictment presented by the same grand jury which brought in the instant true bill. The grand jury there had accused Miss Christison (a) of forging a $250 custodian check payable to Louis Kirkland, (b) of embezzling $250 currency, and (c) of embezzling the Kirkland check.

Upon the filing of the pleas of autrefois acquit, the solicitor nol prossed count two (embezzlement of $225 currency) of the instant indictment. After proof of the prior acquittal the trial judge gave the jury peremptory instructions in favor of the State.

■ In view of the State's nol prossing count two of the indictment, the only substantial question presented by the direction of the verdict on the double jeopardy issue is that raised by the question certified by us to the Supreme Court, i. e., as to whether or not an accusation of embezzlement of a check is the same as one of embezzling money. The Supreme Court's answer of November 15, 1960, shows the ruling of the trial judge to be correct. See 273 Ala. 1, 142 So.2d 663.

■ As to the admission in evidence of other forged checks, the rule applied in Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847 (i. e., prohibiting evidence of other crimes), does not apply here: rather the exception illustrated in the false pretense scheme in Brown v. State, 37 Ala.App. 516, 74 So.2d 273, affirmed 261 Ala. 696, 74 So.2d 277, governs. In McDonald v. State, 83 Ala. 46, 3 So. 305, a forgery case, one purportedly forged note to a merchant was used to show in-

---

made from the microfilm was introduced in evidence, State's Exhibit 15.

The records of the County Board of Education contained a cancelled custodian's check (State's Exhibit 9) on which "2934" as printed was crossed out and "3137A" was substituted with pen and ink. The payee, obviously typed over an erasure, now reads "Dugger Book Store, Broad St. City."

The first endorsement, also over an erasure, appears on Exhibit 9 as "Dugger Book Store" followed on the line below by "O. C. Dugger." Mr. Eugene Dugger, who had Dugger's Book Store on Broad Street, Gadsden, testified that only Miss Christison ever addressed him as "O. C." After examining Exhibit 9 he denied the endorsement as his.

Beneath the purported Dugger endorsement appears "Pay to the order of

First National Bank Birmingham, Alabama Harvey Ragland Co. Inc.–993."

Then followed stamped endorsements of that bank (under date of January 18, 1951) and of the Birmingham Branch of The Federal Reserve Bank of Atlanta.

An assistant cashier of The First National Bank of Birmingham, who had previously identified the photostat of the face of the check as originally made out (Exhibit 15), produced a deposit slip (State's Exhibit 27) given to that bank by the Harvey Ragland Co., Inc., on January 18, 1951, whereon appeared an entry "61–66 Henen A Christian 225.00." (Italics added.) The notation "61–66," which also appears on the upper right hand corner of the check, the witness identified as the number of The American National Bank of Gadsden.

tent to defraud through the utterance of another. Hall v. State, 21 Ala.App. 476, 109 So. 847; McElroy, The Law of Evidence in Alabama (2d Ed.), § 70.11.

That some of the other checks were apparently forged before and after the Hallmark check is unobjectionable. Wright v. State, 138 Ala. 69, 34 So. 1009: order of August 20 admissible on charge of order dated August 7. Smith v. Smith (Fla.) 59 So.2d 625; Annotation 34 A.L.R.2d 777, at 812–13.

State's Exhibit A, the Hallmark check itself, also had thereon: (a) in longhand —"Correction OK H. A. C."; (b) the bank's transit number "61–66"; (c) the
$$\frac{621}{}$$
words, "Know your endorser require identification"; and (c) in a vertical panel on the left side of the check the words, "General Fund," a legend also appearing in the horizontal text and set forth in count one, supra.

■■■ We consider these variations immaterial. Discrepancies and omissions which do not distort the meaning or distract from the legal efficacy of the instrument are not fatal variances. At 23 Am.Jur., Forgery, § 47, we find:

> " * * * It is not necessary to set out marks, ornaments, or marginal figures which form no part of the contract, since they are no part of the forged instrument. Nor is it necessary to state any other matter written on the same, constituting no part of the instrument itself, and not entering into it as an essential description of the instrument. * * *"

We are not unmindful of the statement in Gayden v. State, 38 Ala.App. 39, 80 So.2d 495, 500, that "the instrument alleged to have been forged must be set out * * * either in haec verba or according

to its legal tenor." However, the forgery there charged was of a prescription of a narcotic drug, a felony under Code 1940, T. 22, § 255, as amended by Act No. 306, July 27, 1951. No provision was made for a short form indictment for that offense.

■■■ Also, without juggling the semantical nuances of "haec verba" and "ipsissima verba," we note that the former of these expressions does not call for all the words but merely requires accuracy in the words which are used. See McDaniel v. State, 20 Ala.App. 407, 102 So. 788. Even that rigidity may be relaxed where, as here, the indictment (which follows Code 1940, T. 15, § 259, No. 63) uses the expression "in substance as follows."

Defense counsel point out that the alteration of the Hallmark check took place after the check had been paid, stamped and cancelled by perforation. Hence, it is argued, the instrument was functus officio, as it were, and no longer a check. Its demise as a negotiable instrument, it is argued, produced a fatal variance between charge and proof.

Under Hamilton v. State, 35 Ala.App. 570, 50 So.2d 449, it was held that first, second and third degree forgery each is a distinct offense, rather than a degree of one inclusive crime of three degrees. This distinction, however, is not important here because the word check can describe an instrument the subject of either first or second degree forgery. Earlier when it was necessary under Benson v. State, 124 Ala. 92, 27 So. 1, to prove the incorporation of a national bank,[3] it was nevertheless held that an indictment in Code form for first degree forgery could charge second degree forgery because the check was also "a bill of exchange." See Wyatt v. State, 257 Ala. 90, 57 So.2d 366.

■ So, too, where the forgery is shown to have given the cancelled check a new

3. Modified by Act No. 1009 of March 4, 1901 (Acts 1900–1901, p. 2285), now Code 1940, T. 15, § 315. Our courts take judicial notice that national banks are corporations. Adler v. First National Bank of Birmingham, 233 Ala. 325, 171 So. 904; Campbell v. State, 29 Ala.App. 343, 195 So. 775.

operation, i. e., as a receipt for the payment of money purportedly the act of another, Clorene C. Hallmark, the altered payee, the charge of count one is valid because that instrument was not only a check but also a voucher whereunder Miss Christison feigned to charge herself. Thus, in Nix v. State, 20 Okl.Cr. 373, 202 P. 1042, 1044, 26 A.L.R. 1053, we find:

"It is contended by the defendant that after the $6 check in controversy was delivered to Minnie McCoy and by her indorsed and cashed, and the canceled check returned to the defendant, this canceled check, bearing her signature and indorsement, had then spent its force as an order to pay money, was 'functus officio,' was evidence of no obligation between the parties, and therefore not subject to a penalty for forgery by way of alteration. This was all true, in so far as the instrument related to an order to pay money, but after its payment and the return of the instrument to the defendant, with the signature and indorsement of his ward, it then had another function—it was then a receipt or acquittance from the ward to the defendant, as guardian, for money which he could plead payment of in an action in assumpsit against him by the ward; and when the defendant, for a fraudulent purpose, changed the amount of this receipt or acquittance from $6 to $60, with the intent and for the purpose of filing the same as a voucher from his ward in his final settlement with her and taking credit for the larger amount, such alteration, in our opinion, constituted forgery.

"Under the circumstances here, the instrument was originally the instrument and writing of the defendant, but after it had performed its function as an order to pay money it seems clear to us that it then became the receipt or acknowledgment 'of another,' in this case the ward, for the payment of money received by her; it then became her receipt, the fraudulent alteration of which would constitute forgery.

"From the reference books and reports we find that it is well settled that a receipt is the subject of forgery provided it would operate as the foundation of another's liability or be prejudicial to his rights, if genuine. Any change in such an instrument which alters its legal effect or makes it speak in a substantial matter a different legal language, and causes any obligation to be increased, diminished, or discharged, is forgery. 19 Cyc. 1381; 12 R.C.L. 147; Wharton's Crim. Law, §§ 885–887.

"In the case of Gordon v. Commonwealth, 100 Va. 825, 41 S.E. 746, 57 L.R.A. 744, appears this language:

"'To add to a canceled check the words "in full of account to date" with intent to alter its effect as a receipt, constitutes forgery. * * * The addition to a check of the words "in full of account to date" may constitute forgery if made at any time after the check is delivered to the payee.'

"A returned check, marked 'Paid,' according to business usage and custom and common understanding constitutes a valid receipt from the person indorsing the check and receiving payment. Such being its function and legal effect, where the receipt or voucher has been raised or altered, to the injury of the maker of the receipt, it may be the subject of forgery. As to the character of an instrument which may be the subject of forgery, it must be such that if it were genuine it would have some apparent legal efficacy. It must be one which would work some prejudice to another, affecting his person or property rights; one which, from its nature and the course of business, might deceive or mislead, to the prejudice of another. * * *"

In addition to the Gordon case cited in Nix, see also Bunker v. State, 77 Tex.Cr. R. 38, 177 S.W. 108.

■ We hold that proof of alteration of the name of the payee of a cancelled bank check is not a variance from an indictment charging forgery of the check. We consider it not needful for the grand jury to have averred by innuendo that the check was a receipt when endorsed. Cf. Williams v. State, 90 Ala. 649, 8 So. 825.

■ The claimed errors with respect to the admission of opinion evidence as to Miss Christison's signature and handwriting by non-experts are refuted because (a) there was no objection and (b) the witnesses were shown to be familiar with the signatures and handwriting.

The transcript of evidence shows that at the outset of the trial the defense objected to part of the solicitor's opening statement:

"Now some mention has been made of other indictments * * *".

The trial judge overruled saying:

"Yes, but you put in the same thing. You mentioned it so I think that is in reply."

■ Defense counsel had alluded to "the theory that they indicted her sixteen different times on." We see no error in the ruling.

■ Since count one was in Code form, the court was correct in overruling the demurrers. See Howard v. State, 20 Ala.App. 398, 102 So. 491.

The written charges were all affirmative in effect and the trial judge properly refused to give them to the jury.

We have carefully considered the entire record as we are required by the provisions of Code 1940, T. 15, § 389, and have come to the conclusion that the judgment appealed from is due to be

Affirmed.

On Rehearing

■ Considering our treatment of the Hallmark check as having the operative effect of a receipt, we must admit that for the check to be a receipt which purports to be the act of another, the endorsement must be regarded. But we do not think a forgery need to have been made of the endorsement. For example, a genuinely endorsed check could be forged on its face to change the amount or the date or the purpose for which it is given, and forgery of the face, if material to the instrument as a receipt, would, in our opinion, constitute an instance of second degree forgery.

We are requested, inter alia, to extend the opinion in order to make a "full statement of the evidence and of the facts" showing Miss Christison's pleas of autrefois acquit and the proceedings and rulings thereon.

The defendant's plea 3 reads:

"Comes the defendant in her own proper person, and for plea to the Indictment and to each Count thereof, separately and severally says:

"She aught not to be required to answer this Indictment and that the State aught not to prosecute the same against her, because at the regular session of the Circuit Court of Etowah County, Alabama, on, to-wit: the 9th day of December, 1957, she was charged and put upon trial under an Indictment charging."

[Count 1 of the former indictment is similar to count 1 herein, but describes a check of August 9, 1951, on "Veterans Training Fund" of the School Board payable to the order of Louis Kirkland for $250.]

[Count 2 of the quoted indictment is set forth verbatim in the text of our request submitting the certified question to the Supreme Court, 273 Ala. 1, 142 So.2d 663.]

[Count 3 of the indictment referred to and quoted in defendant's plea 3 is in

similar terms to count 3 of the instant indictment, except that it refers to a check in the amount of $250 payable to Louis Kirkland instead of Clorene C. Hallmark.]

Plea 3 then continues:

"And that after trial, hearing and consideration as to said offense, the defendant was acquitted and discharged. And the defendant says that she is now charged in this Indictment of this offense, which is based upon the same matter and transactions as that for which she was tried and acquitted as aforesaid in the first Indictment. All of which the defendant is ready to verify, and prays that she be discharged in the present Indictment.

Helen Christison
Defendant

"Sworn to and subscribed before me on this 8 day of April, 1959.
George A. Murphy
Notary Public
"Filed 4/8/59"

Plea 4 contains the same text as plea 3, except that it refers to a single count identical to count 2 set forth in the certified question, supra.

Pleas 6 and 7 are substantially the same as plea 4.

Upon the issues made up by these pleas, the defendant first introduced in evidence the indictment in case No. 4354 containing three counts relating to the Louis Kirkland check of August 9, 1951, in the amount of $250.

The defendant then called as a witness the Circuit Clerk, Hon. Howard Kirby, who identified the trial docket sheet in case No. 4354, the final order on which was "jury and verdict of not guilty,". December 12, 1957, with a notation to Minute Book Vol. W, p. 502. Thereupon, a portion of the Minute Book referred to was received in evidence upon identification by Mr. Kirby.

This minute entry is clearly written up in proper form to show Miss Christison discharged from a prosecution on an indictment in Circuit Court case No. 4354. Then the defendant tendered in evidence the indictment in the instant case concerning the Hallmark check.

The defense offered paragraph 1 of a stipulation. Whereupon, the solicitor proceeded to offer the entire agreement. This agreement reads:

"It is agreed by and between the State of Alabama, acting by and through the Solicitor, and the defendant, acting by and through her attorneys, that for the purpose of submitting to the Jury the question of former jeopardy or former acquittal of the defendant by virtue of an acquittal in a previous trial in Case No. 4354, as follows:

"1. That on, to-wit, December 9, 1957, the defendant was placed on trial in Case No. 4354, and on December 12, 1957, the Jury returned a verdict of not guilty. That the case was submitted to the Jury on all three counts contained in the Indictment.

"2. That on the trial of said case, the Court permitted only the check specifically referred to in Counts One and Three of the Indictment to be offered in evidence in proof and support of the offense or offenses charged, and that numerous other checks which were introduced in evidence, including the check on which the defendant is charged in the present Indictment, were introduced in evidence, but were limited by the Court to the purpose of showing guilty knowledge or intent, or a system or pattern, and that in its oral charge to the Jury in said former trial, the Court charged the Jury that all of the checks introduced, other than the one set out in the Indictment, were to be considered by the Jury only for the purpose of showing guilty knowledge, intent, or a system or pattern, and that the defendant was only being tried on the check set out in the Indictment."

■ Paragraph 2 was received over the defense objection; first, under the general grounds of incompetent, etc., and, second, that the facts, testimony, charges to the jury in the former case are immaterial and irrelevant with respect to the issue of former acquittal. The court overruled this objection. We see no prejudice to any substantial right of the defendant in this ruling with respect to the admissibility of paragraph 2, particularly in view of the wording of the agreement. The defendant having introduced part of the document, the State was within its rights in introducing the rest of it.

The court charged the jury affirmatively as we have heretofore indicated on original deliverance.

■ The appellant has also requested that we set forth "a full statement of the evidence and the facts" showing that the endorsement on the check charged in the indictment was not received by the trial court in support of the charge of the indictment, but for the limited purpose of proving motive, intent, etc. We have searched the record, and, though we are not infallible, we consider that the Hallmark check was received in evidence without limitation.

Page 61 of the record shows that when the solicitor offered the check (State's Exhibit No. A) in evidence, defendant objected on the following grounds: (1) First, "incompetent," etc.; (2) it was not shown at that time that it was "a forged check or that anything is wrong with this check and * * * from aught that appears it is entirely a separate and distinct writing"; (3) the check was a material variance between allegata and probata; (4) objection to offering anything other than the face of the check, for that anything appearing on the reverse is not material to the issue; and (5) a claim of variance because of the check showing matter not set forth in the indictment, such as "Correction O. K., H. A. C.," and the perforation made by the bank, "Paid 1–5–51 61–66."

The trial judge overruled the objection; defense counsel asked if the entire check, the front and back, "is being received in evidence." The solicitor replied, "That is the way we offered it." The court said, "Yes." The check was then received in evidence.

On page 230 of the record, we find that after the State rested its case in chief, the court made the following statement:

"Gentlemen, there were some objections interposed to the introducing of the endorsement on the back of several exhibits with reference to Count One and I told you I would give you a ruling on that. Gentlemen of the jury, I will instruct you this way. I will—first, let me for the record—as to Count One, I will sustain that part of the objection and limit the introduction of the endorsement to Count Three. And now I will try to clarify it to the jury. Gentlemen of the jury, we are trying an indictment here in two counts, which are alleged charges of separate offenses. One count charges forgery and another count charges embezzlement. So when the instrument was offered, it goes to you—the entire instrument—the endorsement as to the embezzl'ement count. Some of those endorsements were offered under the limitations that I told you about on Exhibit 5 and those endorsements still go to Count Three, but this Defendant is not charged with forging an endorsement, so far as the endorsement is concerned as to the forgery count, I will limit that and exclude the endorsement as to the forgery count. And I will instruct you further on that when we get to the proper place."

We are not advised of any page number in the record of some 350 pages wherein the endorsement on the Hallmark check was limited for its probative effect to showing motive, intent, etc. We consider the quoted provision from page 230 to refer to other checks and we consider the in-

struction, insofar as it relates to the Hallmark check's endorsement, to exclude the endorsement as to the forgery count, because the defendant was not charged with forging an endorsement. Considered with prior instructions quoted from page 61 of the record above, we believe that the endorsement went to the jury not for the purpose of showing forgery, but to show the entire instrument as described in count 1 of the indictment, the last words of the indictment's description in count 1 being "endorsed Clorene C. Hallmark."

We are further requested to set forth defendant's plea 2 to the indictment which reads as follows:

"Comes the defendant in her own proper person and for plea to Count One of the Indictment says:

"The State aught not further to prosecute this Indictment against her because, the alleged bank check, the subject matter of the Indictment, had at the time of the alleged alteration, forgery or counterfeiting been paid by the bank upon which it was drawn and marked 'Paid' by perforation and had no legal validity as a bill of exchange or as a negotiable instrument or bank check. And this the defendant is ready to verify, and prays that she be discharged.

Helen Christison

Defendant

"Sworn to and subscribed before me on this 8 day of April, 1959

George A. Murphy

Notary Public

"George Murphy

Attorney for Defendant

"Filed 4/9/59"

Finally, in the refused written charges requested by the defendant, there appear in the record several which were affirmative separately as to each of counts 1 and 3 of the indictment upon which the defendant was tried.

We have carefully considered the argument in application for rehearing and con-

sider that the evidence amply supports the verdict on count 3 and also as to count 1 when the Hallmark check is considered in the light of its performing the office of a receipt used in the vouchers of Miss Christison to account for her disbursement of public school funds. Accordingly, the application for rehearing is overruled.

Application overruled.