192 So.2d 747

Lincoln L. SPRUCE

v.

STATE.

6 Div. 213.

Court of Appeals of Alabama.

Dec. 6, 1966.

M. Wayne Wheeler, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant, Lincoln Spruce, was convicted of the offense of unlawful possession of narcotic drugs, and was sentenced to prison for a term of five years. Thereafter his petition for a writ of coram nobis was granted and a new trial was had on December 16, 1965, at which time he was again found guilty and was sentenced to a five-year prison term.

J. W. Jones, a police officer of the City of Birmingham, testified that on December 7, 1959, he was assigned to narcotics investigation and on that day he made an investigation at 508, 12th Street, North, in Birmingham; that Thomas Proffitt and a woman named Dorothy Mae Thomas were sitting on the edge of a bed to right of the door as he went in and one Frank Sullivan was sitting in a chair on the left side of the room. The bed was pulled out from the wall 18 to 24 inches. The officer walked between the bed and the wall and saw a slop jar containing a small amount of water. He came back around the bed and noticed a couple of suitcases under the edge of the bed where the man and woman were sitting. He told Thomas Proffitt to pull the suitcases from under the bed and when he got down on his knees to examine the contents he spied the defendant lying under the bed, naked from the waist up. He

ordered defendant to come out and he crawled out on the side next to the wall. The officer then walked around to where he had seen the slop jar and this time there was in it a small bottle with the top protruding above the water. He took the bottle and placed defendant under arrest. The bottle contained "brownish" color liquid. The witness delivered it to Mr. Robert Johnson, a state toxicologist. He also turned over to Mr. Johnson an aluminum pie pan found in the room, in which there was faint traces of a brownish substance. There was an odor of "cooked-down paregoric" in the room. The officer had on many occasions in his official investigations seen paregoric after it had been boiled down and the substance in the bottle and in the pan appeared to be boiled down paregoric. Neither of the other persons in the room ever got near the slop jar at any time.

Mr. Robert B. Johnson testified he had been a toxicologist with the State Department of Toxicology for ten years. After stating his educational qualifications he testified he had had a great deal of experience in analyzing and examining paregoric in a boiled-down state; that he analyzed the substance in the bottle and pan delivered to him by Officer Jones' and found the bottle contained two-thirds of an ounce of liquid and the liquid contained 34 milligrams, or a little more than half a grain of morphine. Morphine is one of the pure chemicals in opium. The pan was badly stained with a brown residue around the edges. There were tiny traces of morphine in the stains but the amount present was too small to measure.

Detective Jones was recalled to the stand and after stating that defendant was not threatened or abused in any manner; that there was no offer of reward or inducement of any kind to get him to make a statement and that no one in witness' presence or hearing, nor at any other time to his knowledge, told him it would be better if he made a statement or worse for him if he did not make it, testified

that defendant told him Frank Sullivan and Dorothy Thomas had nothing to do with cooking down the paregoric; that it belonged to defendant and Jaybird (Thomas Proffitt); that Jaybird had already "shot his up," and defendant was getting ready to inject his part into his person and the part found in the slop jar belonged to defendant.

Prior to offering this statement of defendant in evidence, the witness was asked by the state's attorney if defendant was told of his right to remain silent; that such statement could be used against him; that he had a right to have counsel present. To each of these questions the witness replied, "I don't remember that."

It is insisted in brief that the court erred in overruling defendant's objection to the introduction of defendant's confession on the grounds that a proper predicate was not laid for its introduction because of Officer Jones' answer of "I don't know" to questions of whether defendant was informed of his right to remain silent, of his right to counsel during interrogation and of the possible use of such confession in court.

The trial in this case was had prior to June 13, 1966, therefore, the rules announced in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 are not applicable. Philpot v. State, 280 Ala. 98, 190 So.2d 291; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

The record does not show that defendant had a lawyer who was not permitted to be present or that he requested a lawyer and his request was denied. The statement was not inadmissible under Escobedo v. State of Illinois, 378 U.S. 478; 84 S.Ct. 1758, 12 L.Ed.2d 977; Mathis v. State, 280 Ala. 16, 189 So.2d 564; Lokos v. State, 278 Ala. 586, 179 So.2d 714; Sanders v. State, 278 Ala. 453, 179 So.2d 35.

■ We are of opinion the defendant's confession was properly admitted in evidence.

'No testimony was introduced in defendant's behalf.

█ The evidence presented questions for the jury to determine and was sufficient to support the verdict. No error resulted from the denial of the defendant's motion to exclude the state's evidence, nor in refusing the requested general affirmative charge.

The judgment is affirmed.

Affirmed.