[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 797 
The grand jury charged the appellant with unlawfully buying, receiving, concealing, or aiding in concealing one 1974 Ford truck, the personal property of Carl Jones. The jury found the appellant "guilty as charged in the indictment," and the trial court set sentence at five years imprisonment.
Deputy Sheriff Kenneth Ray Hill received information from State Investigator Mike Sullivan and F.B.I. Agent Gary Martin that the appellant "might have" in his possession a stolen pickup truck. Acting on this information, Deputy Hill drove out to appellant's place of business, Wright's Fruit Stand, located on U.S. Highway 31, and there noticed a 1974 Ford pick-up truck parked in the parking lot. Deputy Hill checked out the tag number on this particular truck with the National Crime Information Center (NCIC) which informed him that the automobile tag had been issued to appellant but that the vehicle identification number (VIN) appellant had registered for this 1974 truck was of a 1969 Ford series. Deputy Hill then called two state investigators who joined him in his investigation.
Acting without a warrant, the three officers examined the automobile by checking to see if the VIN on the motor matched the VIN mounted on the inside edge of the truck door. Upon discovering that the two VIN's did not match, they relayed the VIN on the motor to NCIC which in turn informed them that this truck had been reported stolen by a Carl W. Jones of Fairfield, Alabama. As a result of this finding, the appellant was later arrested.
Several hours after the appellant's arrest, a bill of sale, dated May 5, 1975, and notarized by a Myrtle H. Ward, was produced by appellant's wife which indicated that appellant had traded a 1971 Dodge pick-up plus $2500.00 in cash for the 1974 pick-up in question. However, the bill of sale was an apparent forgery as evidenced by the fact that the 1971 Dodge truck supposedly traded had been repossessed by the Bank of Prattville in April, 1975, and had been under their control since that time. Also, Willard Frank Spicer, a convicted auto thief, testified that he had stolen a Notary Public Seal from a Myrtle H. Ward and had utilized it many times to "notarize" bills of sale he passed in his automobile theft ring. Spicer stated that he had given a number of "notarized" bills of sale in blank form to his cousin, Rickey Taylor, who was also in the business of stealing automobiles prior to his being convicted for the same.
Rickey Taylor testified that he had given appellant the forged bill of sale after appellant had inquired about "paper work" for a 1974 Ford pick-up, and Taylor further identified some handwriting on the forged bill of sale as his own. Taylor, who had known appellant since he (appellant) was a child, stated that at the time he delivered the forged document to appellant, appellant inquired if he might be interested in purchasing the 1974 Ford pick-up in question.
 I
Appellant contends that the trial court erred in its refusal to suppress testimony concerning the VIN found on the truck door and motor inasmuch as such information was obtained as a result of a "search" which was violative of his Fourth Amendment rights.
The Fourth Amendment to the United States Constitution provides:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [Emphasis added.] *Page 798 
It is evident from the wording of the amendment that a search warrant may only be issued upon an affidavit which sets forth enough facts to establish "probable cause." The amendment also mandates that a warrantless search must not be "unreasonable." However, before a warrantless search can be conducted, as was in the instant case, there still must exist facts and circumstances which constitute "probable cause," since "surely [the requirements] cannot be less stringent" than when a warrant is obtained. Wong Sun v. United States, 371 U.S. 471,83 S.Ct. 407, 9 L.Ed.2d 441; Kamisar, LaFave, Israel, Modern Criminal Procedure, Fourth Edition, Section 3, Note 1, Page 228. See also Draper v. United States, 358 U.S. 307,79 S.Ct. 329, 3 L.Ed.2d 327.[1]
"In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160,175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879. Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132,162, 45 S.Ct. 280, 288, 69 L.Ed. 543. "The substance of all the definitions [of probable cause] is a reasonable ground for belief of guilt." McCarthy v. DeArmit, 99 Pa. 63, quoted with approval in Carroll, supra, 267 U.S. at 161, 45 S.Ct. at 288,69 L.Ed. 543.
The information that Deputy Hill received from the F.B.I. and the State Investigator's Office that appellant "might have" a stolen truck was nothing more than a "bare suspicion" and would not, in itself, support a finding of probable cause to conduct the search. Brinegar v. United States, supra. However, when that information is coupled with the irregularity noted by NCIC and the State Investigator's Office, i.e., the fact that appellant had recorded a 1969 VIN for a 1974 truck on his tag registration, "probable cause" does arise. As noted above, "in dealing with probable cause . . . we deal with probabilities. . . ." Brinegar, supra, and it was certainly reasonable for the officers to conclude that the circumstances evidenced a substantial probability that a crime had been committed. The inspection or "search" of the VIN on the motor and on the post of the unlocked truck door was conducted with probable cause. Cases cited herein.
 II
Appellant, in addition, contends that even if probable cause existed, searches conducted without a warrant are per se
unreasonable under the Fourth Amendment, except in "a few specially established and well-delineated exceptions." Katz v.United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576
(1967).
Our Supreme Court, per Bloodworth, J., noted these established exceptions to the warrant requirement in Daniels v.State, 290 Ala. 316, 276 So.2d 441:
 "Notwithstanding the United States Supreme Court's assertion that its cases on the subject of the extent of a search which may be made without a warrant following a lawful arrest `cannot be satisfactory reconciled,' it now seems to be fairly well established that there are at least six exceptions under which warrantless searches have been held valid, viz:
 "(1) In `plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Page 799 
 "(2) With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and;
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)."
Although appellant recognizes in brief the so-called "automobile exception" to the constitutional requirement of a warrant, it is his contention that the officers who conducted the search here were not confronted with "exigent circumstances" since ". . Appellant [was] a native of the county, was in business there at the time of arrest, and the truck was parked unoccupied [Appellant's Brief, Page 34]."
However, it is "the inherent mobility of automobiles [which] creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 3095, 49 L.Ed.2d 1000 (1976).
Moreover, even though appellant was not personally alerted to police intentions, the potential for the truck's removal from "official grasp" was nevertheless substantial simply as a matter of chance inasmuch as the truck in question was just one of many used in appellant's interstate trucking and produce business. Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464,41 L.Ed.2d 325. It was the existence of these "exigent circumstances" which excused the officers' failure to procure a warrant before making the VIN inspection. Carroll v. UnitedStates, supra.[2]
 III
Appellant also contends that the trial court committed reversible error in sustaining the State's objection to the following question asked by him during the direct examination of his defense witness, Thomas Wiley Lott:
 "Q. What, if anything, did the Sheriff's Deputy promise you to be a witness in this case?" [R. 235]
Although appellant made no offer of proof at trial to show his reason for asking the question or what he anticipated Lott's answer would be, it is evident from the question itself that appellant was attempting to impeach the prior testimony of Deputy Hill by showing Hill's bias toward him.
However, before independent evidence of conduct or statements may be offered to indicate bias on the part of an adverse witness, the particular conduct or statement proposed to be proven must first be called to the attention of the witness whose testimony is under attack. Since no predicate of any kind had been laid by appellant during the cross-examination of Deputy Hill, the trial court's ruling on the objection was correct. Brown v. State, 50 Ala. App. 702, 282 So.2d 322. SeeWells v. State, 292 Ala. 256, 292 So.2d 471; Arnold *Page 800 v. State, Ala.Cr.App., 339 So.2d 616; C. McCormick, Evidence, Second Edition, Section 40.
 IV
The appellant asserts as error the trial court's sustaining of the State's objection to a question he propounded during his cross-examination of State Investigator Sullivan, viz.:
 "Q. Now, will you tell the jury if make [sic] — if you make a practice of going onto private property, and investigating, or opening doors to trucks, and automobiles, to look at the numbers?
"MR. GLEN CURLEE: We object, Your Honor.
 "THE COURT: I'll sustain the objection to that question." [R. 162]
The question was improper and irrelevant since the propriety of the search conducted by the officers in the instant case had been previously ruled on as a matter of law by the trial judge. The trial court was correct in sustaining the objection thereto.
 V
Finally, the appellant contends that the trial court erred in allowing into evidence, through State Investigator Sullivan, hearsay testimony concerning the origin of the 1969 VIN plate (which had been found mounted on the 1974 pick-up truck in question), and the fact that a Jackie Walker had once been employed by appellant. The record recites the testimony objected to as follows:
 "Q. All right. I'll show you State's Exhibit Number Two, and ask you if you've ever seen that before, please, sir? (Indicating) "A. Yes, sir, I have.
 "Q. State to the Ladies and Gentlemen of the Jury where you saw it, and under what circumstances?
 "A. This plate was shown to me by Deputy Kenneth Hill, and it had come off a 1974 Ford. (Indicating)
 "Q. Now, did you make an investigation to determine where it originally came from?
"A. Yes, sir, I did.
 "Q. State to the Ladies and Gentlemen of the Jury what you did in connection with that.
"A. ______
 "MR. J. PAUL LOWERY: We object, Your Honor, on the grounds that it calls for hearsay testimony.
"THE COURT: I'll overrule your objection.
"THE WITNESS: I checked _____
 "THE COURT: You understood the question, now? He said what did you do _____
"THE WITNESS: I made _____
"THE COURT: In connection with that?
 "THE WITNESS: I made an investigation to determine where this particular I.D. Number was manufactured, and where it was shipped to. In doing this we found it was shipped to a nineteen _____
 "MR. J. PAUL LOWERY: We object to what he found, and what he located, Your Honor. The best evidence would be the evidence from the source itself.
"MR. GLEN CURLEE (CONTINUING):
 "Q. Did you find __ let me ask you this, where this plate came from? (Indicating)
"A. Yes, sir, I did.
"Q. Where'd it come from?
"MR. J. PAUL LOWERY: We object.
"THE COURT: I'll overrule your objection to that.
"MR. J. PAUL LOWERY: If he knows.
"THE COURT: Uh huh.
 "THE WITNESS: It came off a 1969 Ford Truck that was registered to Jackie Walker, in Chilton County.
 "MR. J. PAUL LOWERY: All right, sir. Now, Judge, we move to exclude that answer. He has not established, as to the fact, that he knows that of his own volition, and knowledge. He doesn't say how he _____
"THE COURT: He's already said how he found it out.
"MR. GLEN CURLEE: How he found it out. *Page 801 
"MR. GLEN CURLEE (CONTINUING):
 "Q. Now, by whom was Jackie Walker employed, if you know?
 "A. During the month of February, March, and April he was employed by Ozea Wright.
 "Q. Now, did you ascertain — well, let me ask you this. Did you take a picture of the truck, which originally bore this license number?
"A. Yes, sir, I do.
"Q. Do you have that photograph with you?
"A. Yes, sir, I do.
"Q. Would you get it out, please?
"A. Yes, sir." [Emphasis added]
Assuming the stated fact that "It [the 1969 VIN plate] came off a 1969 Ford Truck that was registered to Jackie Walker, in Chilton County" constituted hearsay testimony and was improperly admitted, such was error without injury since this fact was subsequently established, not only by the testimony of Jackie Walker, but also through the admission of certified copies of the official records of the State Department of Revenue. Rule 45, ARAP [R. 140-160, 169-171].
As to Investigator Sullivan's statement that Jackie Walker was employed by appellant "[d]uring the months of February, March, and April . . .," appellant failed to make a timelyobjection to this statement, thus waiving any ground of complaint against its admission on appeal. Barnett v. State,52 Ala. App. 260, 291 So.2d 353.
We have carefully reviewed this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment of the trial court is due to be and is hereby
AFFIRMED.
All the Judges concur.
[1] Although appellant strenuously argues otherwise, Deputy Hill's initial action of entering the parking lot of appellant's business (where "the public comes and goes" [R. 20]) and viewing the tag located on the exterior of the truck in question was not a "search" within the meaning of the Fourth Amendment. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967).
[2] Compare: United States v. Johnson, 413 F.2d 1396 (5th Cir. 1969), aff'd en banc, 431 F.2d 441 (5th Cir. 1970); UnitedStates v. Polk, 433 F.2d 644 (5th Cir. 1970); and United Statesv. Wood, 500 F.2d 681 (5th Cir. 1974), wherein the United States Fifth Circuit Court of Appeals held that "inspections of motor vehicles performed by police officers, who were entitled to be on property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof were not searches withinthe meaning of the Fourth Amendment. . . ." United States v.Johnson, supra, 431 F.2d at 441 [Emphasis added].