369 So.2d 901 (1979)
James Orlando PREYER
v.
STATE.
6 Div. 474 & 6 Div. 480.
Court of Criminal Appeals of Alabama.
April 17, 1979.
*902 Samuel Johnston, Carol Millican, Birmingham, for appellant.
William J. Baxley, Atty. Gen. and James L. O'Kelley, Asst. Atty. Gen., for State.
DeCARLO, Judge.
These are two appeals by an indigent from convictions by a Jefferson County, Alabama, jury. 6 Div. 474, is a case in which appellant was found guilty of violating the Alabama Controlled Substances Act. In 6 Div. 480, a second jury in a separate trial found the appellant guilty of forgery, and sentenced him to five years imprisonment.
The facts involved in the two prosecutions arise from the same transaction, and we have granted the appellant's request that these two appeals be considered together.
In order to maintain an orderly sequence in the recitation of the facts involved we will begin with the prosecution for forgery. The facts presented by the State at trial are as follows:
John L. Stewart, an employee of Alabama Power Company, was a timekeeper and materialman assigned to construction site No. 36 in Jefferson County, Alabama. Among his duties was the preparation of payroll checks. During the trial he testified that, upon returning to work on December 29, 1975, he discovered various items missing from the construction office, including a check book belonging to Alabama Power Company. He identified five checks introduced in evidence which, he said, were among those taken from the office. The *903 missing checks were numbered from about 2632 to 2904.
Mr. Stewart testified that the missing checks were blank Alabama Power Company checks, and that he had not given anyone authority to sign his name to the checks. He also stated that the checks which he identified in court were blank at the time they were taken from the construction office, and that he had not signed them.
Birmingham Police Officer James L. Stegall, testified that, on September 20, 1976, he and some other officers were conducting a surveillance of a residence located at 6514 6th Avenue, South, in Birmingham. Stegall testified that, on that date, he saw a red and white Buick Riviera in front of the residence and that he observed a person, later identified as the appellant, get into the car. The car later returned to the same address and the appellant re-entered the house only to leave a second time.
This time, Officer Stegall followed the appellant and the driver of the automobile to a grocery store, "at the 1300 block of 6th Avenue, South." Stegall stated that he observed the defendant and the driver enter the grocery and followed them into the store. The officer positioned himself directly behind the appellant and testified that he saw the appellant hand the cashier an Alabama Power Company check, along with some identification.
The police officer stated that, at that time, he recognized the check as one of the stolen checks. According to Stegall, the check bore the name of one "Isaac Core." After the appellant presented the check, Stegall testified that he arrested and searched him. In the appellant's socks were four Alabama Power Company checks.
Stegall stated that these checks were shown to Mr. Thomas D. Baker of the Alabama Power Company security office, who was brought to the store by other police officers. Stegall testified that the check which appellant had presented to the cashier and those found in his socks were turned over to Sgt. Maddux of the Birmingham Police Department.
Thomas David Baker, the assistant supervisor of security for Alabama Power Company, had prepared a record pertaining to the burglary of the construction site in December of 1975. Baker testified that some 271 Alabama Power Company checks had been taken, bearing the numbers in sequence from 2633 through 2904.
Baker stated that, on September 20, 1976, he had occasion to accompany some officers of the Birmingham Police Department to a residence located on 6th Avenue, South. He testified that he and Sgt. Trimm of the Birmingham Police Department observed a Buick Riviera in front of the residence, and that the appellant was a passenger in the car.
According to Baker, he and the police officers followed the car to a grocery on 6th Avenue, South. Baker stated that he observed Officers Stegall and Norris enter the store and that he also went into the store.
There the officers showed him an Alabama Power Company check, No. 2846, which he identified as one of the checks stolen from the construction site office. He also identified four other checks which he stated were among those taken during the burglary on December 29, 1975.
Detective Sgt. John Maddux testified that he instructed Officers Norris, Stegall, and Trimm to assist him in the surveillance of a residence at 6514 6th Avenue, South.
Maddux stated that, during the surveillance, he observed the appellant get into a late model Buick outside the residence, and that the occupants of the car later went to a grocery store on 6th Avenue, South. He also testified that he received some checks and other articles of identification from Officer Stegall at the grocery, which were taken during the appellant's arrest and the search of the car in which he had been riding.
Theresa Bailey, a cashier at the grocery on September 20, 1976, identified appellant as the man who presented the Alabama Power Company check to be cashed. She stated that the appellant also showed her *904 an identification card, and she turned this item over to Officer Stegall, along with the check.
At the conclusion of Bailey's testimony, the State rested its case and the defense made a motion to exclude the evidence on the grounds that the State had failed to make out a prima facie case. The motion was overruled and the defense presented its evidence.
Sgt. Maddux was re-called and testified that there were two individuals in the Buick, the appellant and George Acey, the driver, and that the car was registered to Acey. Further, Maddux testified that Acey had stated "that he did not know anything about Mr. Preyer's activities and he was merely a person who was going to give him [appellant] a ride to that scene."
The appellant testified that, on September 20, 1976, he lived at 6514 6th Avenue, South, and that, on that date, he had gone to the grocery on 6th Avenue and 13th Street with George Acey.
He stated that, when they arrived, Acey had told him to get a check okayed. Preyer stated that, before the cashier could actually cash the check, the officer was standing directly behind him and placed him under arrest.
Preyer denied that any stolen checks had been found in his socks and stated that he "wasn't even wearing any socks that day." Further, in his statement to police appellant said that George Acey had given him the check and that he had received it immediately prior to his arrest.
Sgt. Donald Trimm testified that he examined the automobile in which appellant had been riding and found an envelope containing "some identification in it and some checks and other types of identification." Trimm stated that he turned these items over to Police Sgt. Maddux, who testified that the envelope contained Alabama Power Company checks made out to Israel Core, a driver's license, and other identification belonging to James Orlando Preyer, the appellant.
The events inside the grocery, together with the envelope containing the stolen checks recovered from the car in which appellant had been riding, were the basis for a search warrant issued the following day, directing a search of appellant's residence.
Following the appellant's arrest, and a search of the automobile in the parking lot, the surveillance of appellant's residence was resumed and a search warrant was obtained the following morning based on information received from an informant as well as the items found in the search of the vehicle. The facts given in the following affidavit in support of the search warrant are substantiated in the testimony recorded in the transcript of evidence. The affidavit reads, in pertinent part, as follows:
"In December, 1975, over 200 checks were stolen in a burglary at an Alabama Power Company construction site.
"On September 20, 1976 Sgt. John M. Maddox of the Birmingham Police Department received information from an informant that James Preyer of 6514-6th Ave. S. in Birmingham, had in his possession and secreted about 6514-6th Ave. S. a large number of checks stolen from Alabama Power Company in December, 1975.
"This informant further stated that James Preyer was in the process of attempting to cash these checks and that if Preyer was followed by the police officers they would see him cashing these checks. A surveillance was begun on September 20, 1976 at 6514-6th Ave. South at 5:15 P.M. Preyer was observed leaving 6514-6th Ave. S. and entering a Buick Riviera driven by a Black Male later identified as George Acey. This vehicle was followed to Bruno's grocery store at 12th Street and 6th Avenue South where Preyer was observed entering Bruno's Supermarket Store # 11 and approached the Cashier where he was observed presenting a check payable to the order of Isreal Core. The Check # 2 as 2846. He was arrested and placed in custody. A search of Preyer incident to this arrest at the scene revealed Four (4) more stolen checks in *905 his possession and altered drivers license belonging or issued to Isreal Core.
"[A] search of the Buick vehicle parked at Bruno's that Preyer and Acey arrived in, revealed a white envelope with Physicians Mutual Insurance Company on the outside of the envelope. Inside were three (3) stolen Alabama Power Company checks and a plastic picture holder which contained Preyer's drivers license, Social Security card, Armed Forces DD-214, and other miscellaneous papers and pictures with Preyer's name on them. These items of identification all listed his home address 6514-6th Ave. S.
"Based on the above information from the informant and the corroborating actions of Preyer and observations of Police Officers that led to the arrest of Preyer, I have probable cause to believe and do believe that a large number of stolen Alabama Power checks are located at 6514-6th Avenue South. . . ."
After the search warrant was issued, Sgts. Maddux and Trimm and a representative of the Alabama Power Company (Mr. Baker) approached the house. After determining that no one was inside, they entered the house by means of a key taken from the appellant at his arrest and conducted the search.
The return to the search warrant indicates that, among others, the following items were taken during the search:
"Sack of various pills, 1 bottle of pills, 17 Alabama Power Company Checks [and] Assorted Pills and Paraphernalia. . . ."
During the search, two folds of tin-foil containing a "grassy substance" were also recovered. These items were taken by Sgt. Maddux, inventoried at the police department, and were turned over to the State Toxicologist.
The items listed above are the basis of the prosecution in 6 Div. 474, involving the possession of illegal drugs contrary to the Alabama Uniform Controlled Substances Act.
Several people entered the appellant's residence while the search was being conducted, including Ambrose Dancy and the appellant's mother, both of whom testified at trial for the appellant. Upon entering the house, Dancy identified himself as the appellant's brother. At trial, Dancy stated that he had visited appellant's home almost daily and had often come to parties during the weekend. He stated that marijuana was smoked at the parties but that he had never seen any pills during his visits. He also said that the confiscated pills were not his and that he had never seen them in appellant's residence, nor did he see anyone bring them there.
The appellant's mother testified that she frequently visited her son at the address given in the warrant and that it was a "family home." She stated that she often encountered friends of the appellant at the house when he was not there. On some of those occasions, George Acey had been present in her son's absence.
During cross-examination, Mrs. Preyer stated that she did not tell the officers searching the house that her son lived in the house alone and testified that, on September 20, 1976, she resided at 6514 6th Avenue, South.
The State toxicologist testified that some of the pills found at appellant's residence were phenobarbital but that others were not controlled substances. He identified the "grassy substance" found during the search as marijuana and some of the other items confiscated as "paraphernalia." He estimated that there were some 0.835 grams of marijuana confiscated, as well as 447 tablets of phenobarbital.
The appellant testified in his own behalf and stated that he lived at 6514 6th Avenue, South and had lived there all of his life. He denied having any knowledge of the phenobarbital or of the marijuana found in his home.

I
The appellant contends that the evidence against him was obtained as a result of the warrantless arrest at the store, which was conducted without any showing of probable *906 cause and that such evidence was inadmissible.
It is well established in Alabama that a police officer may arrest any person without a warrant for a public offense committed in his presence. Hutto v. State, 53 Ala.App. 685, 304 So.2d 29; Cassell v. State, 55 Ala.App. 502, 317 So.2d 348; Weeks v. State, 49 Ala.App. 618, 274 So.2d 646. It is not necessary that the police officer have before him evidence which would support a conviction, but he must have knowledge of facts and circumstances which are reasonably trustworthy and which would lead a prudent man to believe that the suspect had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Braxton v. State, Ala.Cr.App., 350 So.2d 753. Further, we are mindful of the United States Supreme Court's observation in Brinegar v. U.S., 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, in which the Supreme Court reasoned:
"The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law abiding citizens at the mercy of the officers' whim or caprice."
In the instant case, a police officer observed the defendant hand the cashier the Alabama Power Company check. At the time, the officer was standing immediately behind the defendant and was certainly in a position to identify the check as an Alabama Power Company check.
From the record, the officer testified, as follows:
"A. I observed the defendant handing the cashier a check and some identification.
"Q. Were you close enough to see the check and the identification?
"A. Not the identification, just the check.
"Q. Where were you in relation to the defendant when he handed the cashier the check and the identification?
"A. Approximately two or three inches, looking over his shoulder."
Prior to appellant's arrest, the officer had information from his superior, whereby he was instructed to "set up a surveillance on [appellant's] house and to follow anyone in a Buick Riviera that came out of that house."
The officer also acknowledged that a representative from the Alabama Power Company, Mr. Thomas Baker, was present at the time of appellant's arrest.
Testimony from Mr. Baker indicated that, on September 20, 1976, he had a telephone conversation with the arresting officer's superior regarding this matter, and that he had participated in the surveillance of the appellant's residence, and was present at his arrest.
Mr. Baker also testified that he observed the appellant go into the food store and that he, too, went into the grocery and observed the police officers with the appellant. During questioning, Mr. Baker was asked:
"Q. Did you approach the two police officers and this defendant at that time?
"A. Yes, sir.
"Q. Were you shown anything by anyone at that time?
"A. Yes, sir.
"Q. What, if anything were you shown, please sir?
"A. I was shown a check an Alabama Power Company Construction check and I believe it was numbered 2846, I believe that was the one that was shown to me and I was asked to identify that check as being one that was stolen."
Based on the foregoing, it is our judgment that the arresting officer, without question, was aware that a number of Alabama Power Company checks had been stolen at the time he observed the appellant with the check in question. It is reasonable to conclude that, after being directed to conduct the surveillance of the appellant's residence in the company of an employee of the Alabama Power Company, the officer *907 would have knowledge that the object of the surveillance was to locate the stolen checks. The fact that the appellant presented an Alabama Power Company check to be cashed would have led any prudent person to believe, under the foregoing circumstances, that the check was one of the checks stolen from the Alabama Power Company.
Therefore, applying the reasonableness test of Beck v. Ohio, supra, we believe that the police officer had probable cause to make the arrest in the instant case, and that the items obtained as a result of the search of appellant's person and the car he had ridden in were admissible in evidence.

II
The appellant insists that the trial court committed reversible error in allowing the State to introduce into evidence the checks found on his person and those found in the automobile in which he had been riding.
In a prosecution for forgery, the admission into evidence of other forged checks is proper to show intent to defraud. Christison v. State, 41 Ala.App. 192, 142 So.2d 666. See also McDonald v. State, 83 Ala. 46, 3 So. 305; Hall v. State, 21 Ala.App. 476, 109 So. 847.
From the record, we find that the checks found on the appellant's person and presented in evidence were Alabama Power Company checks made to the order of Israel Core. The three checks found in the car searched by police officers outside the store were made to the order of Israel Core and Jetson Scarbrough, Jr. The arresting officer also testified that, at the time of his arrest, the appellant stated that his name was James Orlando Preyer.
Under the foregoing circumstances, the checks found on the appellant's person and in the car were admissible to show appellant's intent to defraud. Christison v. State, supra. Further, the checks had a tendency to enlighten the jury as to the culpability of the appellant and were relevant and properly admitted. Barnes v. State, 31 Ala.App. 187, 14 So.2d 242; Waters v. State, Ala.Cr.App., 357 So.2d 368.

III
The appellant claims that the search warrant authorizing the search of his home, during which drugs were found, was based on information gained during an illegal warrantless search of the automobile in which he had been a passenger at the store's parking lot. He insists that the search of the automobile was in violation of his Fourth Amendment rights and that the search warrant, which was based on the fruits of the automobile search, was therefore invalid.
Searches of parked automobiles generally contemporaneous in time with the arrest and in the general vicinity of the point of arrest have been upheld as incident to the arrest involved. U. S. v. Pollard, 10th Cir., 466 F.2d 1; Carlton v. Estelle, 5th Cir., 480 F.2d 759; United States v. Frazier, 8th Cir., 545 F.2d 71.
The search of an automobile was proper and determined to be essentially contemporaneous and incident to arrest where the owner of an automobile and another were arrested on a charge of shoplifting a short distance from the automobile. People v. Cox, 269 Cal.App.2d 579, 75 Cal.Rptr. 147. Where the search of an automobile in front of an apartment was conducted some minutes after an arrest, the search was deemed proper as being generally contemporaneous with the arrest and incident thereto. People v. Green, 235 Cal.App.2d 506, 45 Cal. Rptr. 371.
Where the accused ran from the scene after his car had collided with a police car, the search of the car at the place of abandonment and after it had been towed in was held to be proper. Whitlock v. State, 124 Ga.App. 599, 185 S.E.2d 90. The search of a vehicle was held valid where a rape and kidnap suspect was arrested some ninety yards from a vehicle which police knew had been used to kidnap the victim. Moore v. State, 23 Md.App. 540, 329 A.2d 48.
The search of a parked car a few blocks from a store allegedly robbed was held *908 proper when the search was made for the fruits of crime or evidence relating to crime and the police had valid custody at the time of the search and had made a valid arrest. Mathis v. People, 167 Colo. 504, 448 P.2d 633. The search of an unattended automobile a half mile from the scene of arrest was reasonable where the defendant was seen moving toward the car's location, the car showed signs of recent use, and it was illegally parked. Hunter v. State, 127 Ga. App. 664, 194 S.E.2d 680.
In Alabama, the search of an automobile in which the defendant had been riding, incident to a lawful arrest, was legal, even though no search warrant had been issued, and the evidence found therein was admissible. Thompson v. State, 47 Ala.App. 28, 249 So.2d 644.
In addition, the search without a warrant of an automobile in which the defendant and a companion were arrested was allowed, even though it occurred at the police station after the car had been towed from the scene of arrest. The search was declared to be reasonable and inventorial in nature, and not in violation of the defendant's rights. Jackson v. State, 55 Ala.App. 334, 315 So.2d 131.
Finally, the search of an automobile on the road and away from the scene, where the occupants were arrested for possession of a still, has been held proper, where, in the course of the search, the agent took the keys and unlocked the trunk, disclosing evidence. Devaney v. State, 55 Ala.App. 408, 316 So.2d 239.
The fundamental reason for allowing greater latitude in the search of an automobile, as opposed to a residence, an office, or a fixed piece of property, is the mobility of the car. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.
In determining Fourth Amendment violations, the Supreme Court of the United States has traditionally drawn a distinction between automobiles and homes or offices. Although automobiles come within the reach of the Fourth Amendment, warrantless examinations have been upheld in circumstances where searches of homes or offices would not have been. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. A person has a lesser expectation of privacy in a motor vehicle due to the fact that it functions as transportation and seldom serves as one's residence or as a depository of his personal effects. Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325.
The wisdom of this view can readily be seen from the facts in the case before us. Here the police, immediately upon the arrest of the appellant, searched him and found four Alabama Power Company checks on his person. The police officers had learned from Alabama Power Company authorities that approximately 250 checks had been taken in a burglary, and presumably believed that the vehicle in which they had seen the appellant would also contain stolen checks. Under these circumstances, it was natural for the officers to turn to the vehicle in which the appellant had been seen before he was arrested in search of other stolen Alabama Power Company checks.
As this court has stated on a number of occasions, probable cause, as the term implies, deals with probabilities. It is not technical, it is the factual and practical consideration of everyday life upon which reasonable and prudent men, and not legal technicians, act. See Brinegar v. United States, supra.
As this court stated in Wright v. State, Ala.Cr.App., 343 So.2d 795:
"[P]robable cause exists where `the facts and circumstances within their [the officer's] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. `The substance of all definitions [of probable cause] is a reasonable ground for belief of guilt.'" [Citations omitted].
The facts before the officers in the present case were not based on "bare suspicion." See Brinegar v. United States, supra. *909 Under the circumstances, it was certainly reasonable for the officers to conclude that more incriminating evidence would be found in the car in which appellant had ridden. A search of the vehicle was not in violation of the Fourth Amendment and was conducted under circumstances demonstrating probable cause.
Therefore, based upon the foregoing, it is our judgment that the trial court was not in error in denying the motion to suppress the evidence, and, under the circumstances surrounding the search, the evidence found in the car was admissible.
We distinguish Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 in that the accused in Preston was arrested for vagrancy and the car was impounded and taken to the police station because the officers did not wish to leave the car on a public street. It was not suggested that they did this for the accused's convenience nor that they had any right to impound the car or keep it from the accused or anyone he sent for it. In fact, the impoundment of the accused's vehicle by the police was totally unrelated to the vagrancy charge for which he was arrested, as was the subsequent search.
In the present case, the vehicle was not moved by the police, and, after arresting the appellant for forgery of a check, which was among some 200 checks stolen, they had reason to believe that other checks would be found in the car. It is clear that the search was related to the offense for which the appellant had been arrested, and it cannot be reasonably maintained that the search was in any fashion remote.
The facts in this case clearly demonstrate that the search occurred within minutes of the arrest. In our judgment, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 can be distinguished for the fundamental reason that, in the present case, we are concerned with the search of an automobile, whereas in Chimel the arrest and search occurred in a residence.
In regard to the search of appellant's residence, the affidavit in support of the search warrant demonstrates sufficient probable cause for the issuance of the search warrant. It also shows that, although the officers had information of appellant's involvement in crime from an informant, that information was acted upon only for the purpose of corroborating the facts given to them by the informant. Draper v. U. S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

IV
It is now insisted that the State failed to establish constructive possession of the narcotics by the appellant because it failed to "produce evidence which would enable a jury to conclude beyond a reasonable doubt that the accused knew" of the presence of the narcotics in his house.
Whether the appellant knew of the presence of narcotics in his home is a question for the jury. Henderson v. State, Ala. Cr.App., 347 So.2d 540.
In the present case, Sgt. Maddux had been told that the appellant lived at 6514 6th Ave. South and, during the surveillance, saw him leave the house on two occasions.
After the appellant's arrest in the store, an Alabama drivers license, an Alabama fishing license and two personal identification cards were found in the automobile in which he had arrived, all of which listed the address of the house searched. In addition, among the keys found on the appellant's person, one fit the door of the house at 6514 6th Avenue, South. It was this key that the officers used when entering the house. Further, the officers were told by the appellant's mother that her son lived alone in the house.
Although we have testimony from appellant's mother that the house at 6514 6th Avenue, South was also her residence and that others were in and out of the house and were there in her son's absence, testimony from Ambrose Dancy indicated that he had attended numerous parties at appellant's residence at which marijuana was smoked. These were factors for the jury's consideration.
*910 Based on the foregoing, we believe that the jury was presented with sufficient evidence from which to determine the accused's knowledge of the presence of drugs at his residence and to determine the issue of his guilt. Henderson v. State, supra; Funches v. State, 53 Ala.App. 330, 299 So.2d 771; Spruce v. State, 43 Ala.App. 487, 192 So.2d 747.
Therefore, we hold that the rulings by the trial court denying appellant's motion to exclude the evidence obtained during the searches in question and his subsequent motions for new trials in each prosecution were proper. Waldrup v. State, 52 Ala. App. 292, 291 So.2d 383.
We have read and examined the records and transcripts of evidence in both convictions before us and have not found any error prejudicial to this appellant. Therefore, the judgment of conviction by the Jefferson Circuit Court in each of these cases is affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON, J., concur.
BOOKOUT and BOWEN, JJ., concur specially.
BOOKOUT, Judge, concurring specially:
I concur in the result, but would not go on record as in Part III of the opinion, supra, in upholding the warrantless searches of automobiles as incident to the arrest elsewhere of the owner or a passenger. The search of the automobile in question could not be challenged by the appellant simply because he, as a passenger, had no standing to raise the Fourth Amendment. It has been often stated that the Fourth Amendment protects persons, not places. The automobile searched in the instant case belonged to Acey and not the appellant and, therefore, appellant lacked the standing to challenge the search. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Lewis v. State, Ala.Cr.App., 335 So.2d 426 (1975), cert. denied, Ala., 335 So.2d 429; Cassady v. United States, 410 F.2d 379 (5th Cir., 1969).
BOWEN, J., joins in the above.