Marvin Holley was charged with unlawfully selling, delivering or having in his possession, contrary to law, a quantity of marijuana in excess of 2.2 pounds. The jury found the appellant "guilty as charged in the indictment" and the trial court, following a sentencing hearing, set sentence at imprisonment in the penitentiary for 10 years and fixed a fine of $25,000.
The appellant filed a motion for new trial challenging the weight and sufficiency of the evidence, particularly challenging the appellant's knowledge that such marijuana was on his premises. This was duly overruled following a hearing thereon.
Jim Mays testified that on October 5, 1981, he was Deputy Sheriff for DeKalb County, Alabama, and accompanied by a search warrant and several fellow officers, he went to the home of the appellant and presented him with the search warrant. The officers who accompanied him were Chief Deputy Cecil Reed, County Investigators Eddie Wright and Noel Hicks, Dale Orr, Assistant Chief Deputy and Donnie Wagner, also a deputy. He stated that the appellant lived on the premises with his step-daughter, Lisa Holley, and a small child. Deputy Mays then described the premises and a chain length fence which went around the premises and indicated that the original home had been burned which had been a trailer type home. There was an out building which had been fixed up as living quarters and appellant and his step-daughter were living there. He then described a field approximately 40 to 50 feet behind the out building in which he found some 32 bales of marijuana wrapped in burlap and which, after weighing same, came to over 640 pounds. He also described finding a cellophane zip top bag which contained marijuana residue in a trash can in the kitchen and a set of scales and several other zip top bags outside of the residence in the back door of the trailer. Together with his fellow officers, they loaded the material and took it into the sheriff's office where it was placed in the evidence room. He stated that some of the marijuana was still wet from moisture or rain.
Sheriff's Investigator Eddie Wright testified that he had gone to the residence of Marvin Holley with Deputy Mays and other deputies and assisted in bringing the marijuana to the sheriff's office. A few days thereafter he went into the evidence room and, in the presence of Chuck Nelson, took some of the green plant material from several of the burlap bags and placed it in plastic bags and then sealed it and initialed it. He stated that the green plant material had been wrapped in burlap sacks similar to potato sacks and estimated its value at approximately $300 a pound or about $150,000.00.
Chuck Nelson testified that he received a clear plastic bag containing green plant material from Sheriff's Investigator Eddie Wright which was marked while in the evidence room and then taken directly to Martha Odom at the Huntsville Crime Lab, all in October, 1981. *Page 831 
Ms. Martha Odom testified she received a large, clear plastic bag containing green plant material from DeKalb County Sheriff Chuck Nelson, on October 15, 1981. After performing some three different tests, she determined that the material was all marijuana, or cannabis setiva L and that this weighed 8.7 pounds. She stated that after performing the tests, the remainder of the material was picked up from her office by DeKalb Deputy Vernon Coots on November 4, 1981.
DeKalb Deputy Vernon Coots testified he picked up the plastic bag on November 4, 1981 from Ms. Odom and returned it to the evidence room at the DeKalb Sheriff's Office and turned it over to Deputy Don Wagner, who was in charge of the evidence room. Deputy Don Wagner testified that he received the bag from Deputy Coots in November, 1981, and brought this to court, marked State's Exhibit 3, and that it had been in his care and custody since delivery to him by Deputy Coots.
The appellant's motion to exclude the State's evidence was overruled.
Appellant then presented testimony of Mrs. Dale Ray Dobbins and Mr. Joe Bethune, both neighbors, who testified that appellant's reputation was good.
The appellant also presented the testimony of Miss Carolyn Holley, his step-daughter, who testified that she lived with her step-father and was not aware of there being any marijuana on the premises, nor had she ever seen her step-father sell any.
Miss Lisa Holley, another step-daughter, testified that she was not present at her step-father's home on October 5, 1981, but that her sister Carolyn was there. She testified that their approximately 12 acre tract was all entirely under fence and she had never known of her step-father using marijuana or selling marijuana, nor had she ever seen any marijuana at her step-father's home.
Mr. Clarence Tinker, a neighbor across the road, testified that Mr. Holley's reputation was good and that he had never heard of Holley selling marijuana or using marijuana.
Mr. John West, another neighbor, gave similar testimony.
The appellant himself took the stand and admitted that he was present with his step-daughter when sheriff's deputies came on October 5, 1981, and presented him with a search warrant. He stated that his farm was sixteen and one-half acres and that at least ten or twelve acres was under fence. He said that it was about 100 yards from his old chicken house out into the field where the burlap bags were found which contained the marijuana. He stated that he was unaware that the marijuana was on the premises and that he did not use it, had not sold marijuana, and did not know of its presence. He was a chicken farmer and the scales found on his premises were used to weigh chicken feed. He stated that he "hardly had enough money to buy groceries, but that he did receive Social Security and sold chickens."
Mr. Holley denied selling marijuana and stated that he had two adopted children who lived with him and had been reared by him as his own since his wife's death.
At the close of defendant's evidence, the appellant again moved to exclude and discharge the appellant because the State had not met the burden of proof and asked for a directed verdict because it had not been established that the appellant knew of the marijuana's presence on the premises which constituted the appellant's residence.
This motion was overruled.
There was no exception to the oral charge of the court.
 I
Appellant strenuously argues that he did not know of the presence of the marijuana on his premises which he maintained was found about 200 feet from his chicken house in a field and that his business was raising chickens and he was unaware that this quantity of marijuana or any marijuana was on the premises which constituted his residence.
The set of scales and clear plastic bags found at the house trailer on the premises were properly admitted by the trial judge to show "the complete story *Page 832 
concerning the items found within the residence area." Brantleyv. State, 294 Ala. 344, 317 So.2d 345 (1975) and Green v.State, 384 So.2d 1215 (Ala.Cr.App. 1980) and Fields v. State,333 So.2d 861 (Ala.Cr.App. 1976).
The appellant contends that his motion to exclude at the close of the State's case and that his motion for a directed verdict at the close of all evidence were due to be granted because the State did not prove beyond a reasonable doubt that the appellant had knowledge of the presence of the controlled substance at his home.
In Daniels v. State, 49 Ala. App. 654, 275 So.2d 169 (1973), this court stated:
 "In a prosecution for unlawful possession of narcotics it is not necessary to prove manucaption but constructive possession may be shown, and where such possession is relied upon the State must also prove beyond a reasonable doubt that the accused knew of the presence of the prohibited substance. Rueffert v. State, 46 Ala. App. 36, 237 So.2d 520; Spruce v. State, 43 Ala. App. 487, 192 So.2d 747. See cases in 16 Alabama Digest, Poisons, Keynote 9.
 "Such guilty knowledge may be established by circumstantial evidence and guilt does not necessarily depend upon ownership. Parks v. State, 46 Ala. App. 722, 248 So.2d 761."
See also Green v. State, 384 So.2d 1215 (Ala.Cr.App. 1980) and Coleman v. State, 394 So.2d 82 (Ala.Cr.App. 1981). Thus, the appellant's motions were properly overruled.
In the case at bar, the appellant, at the hearing on the motion for new trial, presented the testimony of his adopted son, Stoney Holley, who testified that he lived in Jasper, Tennessee, and was afraid to come to DeKalb County at the time of the trial, because one "Red Daniels would kill me," but that he had seen Red Daniels dump the large bags of marijuana in the rear of his father's home on October 4, 1981.
The appellant testified he only found out about this from his daughter, Lisa Holley, after trial.
After hearing the evidence, the trial judge ruled that the matter of "knowledge" had been properly submitted before the jury at trial, based upon the issue of appellant's knowledge of the presence of the marijuana, and overruled the motion for new trial.
This court is of the opinion that the trial judge properly overruled the motion for new trial as this testimony was cumulative of other evidence presented at trial. The issue of appellant's knowledge of the presence of marijuana on the premises was a matter which was properly submitted to the jury.Henderson v. State, 347 So.2d 540 (Ala.Cr.App. 1977), cert. quashed, 347 So.2d 543 (Ala. 1977), and authorities therein cited; McHellen v. State, 351 So.2d 689 (Ala.Cr.App. 1977);Coleman v. State, 394 So.2d 82 (Ala.Cr.App. 1981); Dickerson v.State, 414 So.2d 998 (Ala.Cr.App. 1982) and Luster v. State,433 So.2d 481 (Ala.Cr.App. 1983) and authorities cited therein.
We have carefully examined this record and find no error. The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.